677 So.2d 1336 (1996)
Angela RUIZ and Raul Ruiz, Appellants,
v.
FORTUNE INSURANCE COMPANY, Appellee.
No. 94-656.
District Court of Appeal of Florida, Third District.
August 7, 1996.
*1337 Carlos Lidsky and Thomas A. Paigo, and Juan Carlos Montes, Hialeah, for appellants.
Diane H. Tutt; Plantation, Parenti Falk Waas & Frazier and Gail Leverett Parenti, Coral Gables, for appellee.
Before SCHWARTZ, C.J., and GODERICH and GREEN, JJ.
PER CURIAM.
The plaintiffs, Angela and Raul Ruiz, appeal from an adverse summary judgment. We affirm.
On September 7, 1990, the Ruizes purchased their initial homeowner's insurance policy for their mobile home from Fortune Insurance Company ("Fortune") through an insurance broker called Bates Hernandez Associates ("Bates"). Bates, in turn, secured the insurance from Fortune through Fortune's agent, Biscayne Underwriting Management, Inc. ("Biscayne").
On November 30, 1990, Fortune terminated its agency relationship with Biscayne effective December 19, 1990, and filed notice to that effect with the Insurance Commissioner pursuant to section 626.471, Florida Statutes (1991).
At the hearing below, Fortune produced evidence that on July 10, 1991, Fortune sent a notice of cancellation to the Ruizes advising them that their homeowner's insurance would not be renewed on September 7, 1991. Fortune also indicated in the upper right hand of this notice that Biscayne was their agent. At the bottom of the notice, however, Fortune stated "Non-renewal agency is no longer doing business with us."[1]
In August 1991, or approximately thirty days prior to the expiration of the Ruizes' policy, Bates sent a renewal notice to the Ruizes for both their homeowner's and automobile policies with Fortune. In response, *1338 the Ruizes went to Bates' office on September 3, 1991 to renew both their homeowner's and automobile policies with Fortune. Without informing Bates of Fortune's notice of cancellation mailed to them, the Ruizes paid Bates a $450 premium for the renewal of both their homeowner's and automobile policies with Fortune. Bates cashed the check and transmitted a check to Biscayne with the Ruizes' name on it. Biscayne accepted this money, notwithstanding the termination of its agency relationship with Fortune.[2]
On August 24, 1992, the Ruizes' mobile home was damaged by Hurricane Andrew. Two weeks later, the Ruizes reported their losses to Fortune directly. They were told that they had no homeowner's policy in force and effect with Fortune on August 24, 1992, and that their policy had been cancelled in 1991. The Ruizes thereafter filed suit against Fortune, and the trial court entered summary judgment in favor of Fortune. This appeal followed.
Initially, we note that section 627.4133, Florida Statutes (1991) prescribes the precise manner in which an insurer must provide a notice of cancellation or nonrenewal to its insured. Although the Ruizes contended below that they never received Fortune's notice of cancellation, Fortune produced below a copy of the notice of cancellation and proof that it mailed the same to the Ruizes. The law is clear that an insurer's proof of mailing of a notice of cancellation to the insured prevails as a matter of law over the insured's denial as to its receipt. Bankers Ins. Co. v. Pannunzio, 538 So.2d 61 (Fla. 4th DCA 1989); Burgos v. Independent Fire Ins. Co., 371 So.2d 539 (Fla. 3d DCA 1979).
We find that Fortune's notice of cancellation of the Ruizes' homeowner's insurance as well as its cancellation of its agency relationship with Biscayne satisfied the requirement of section 627.4133. Fortune's actual notice of cancellation to the Ruizes was legally sufficient and binding, whether or not the Ruizes read or understood the import of such notice. See Belcher v. Ferrara, 511 So.2d 1089 (Fla. 3d DCA 1987)(imputing notice of attorney's withdrawal to client who failed to open his mail or otherwise contact attorney); Amjems, Inc. v. F.R. Orr Const. Co., 617 F.Supp. 273, 278 (S.D.Fla.1985)(recognizing that some facts impose a duty of inquiry on a person to acquire additional information); Symons v. State, Dep't. of Banking & Finance, 490 So.2d 1322 (Fla. 1st DCA 1986)(recognizing that the unreasonable failure to obtain knowledge may result in "implied actual notice" in eyes of the court); cf., e.g., Wirt v. Central Life Assur. Co., 613 So.2d 478 (Fla. 2d DCA 1992)(noting duty to read and understand contents of contract). Any lack of understanding of this written notice on the part of the Ruizes only placed a duty upon them to make further inquiry of their broker, agent and/or insurer.[3]
We further reject the Ruizes' argument on appeal that Fortune is estopped from disclaiming coverage where Biscayne accepted the Ruizes' renewal premium after Fortune's termination of its agency relationship with Biscayne. There is no record evidence that Fortune engaged in any conduct or action which would reasonably lead the Ruizes to believe that Biscayne had continuing actual or apparent authority to collect such premiums on behalf of Fortune. E.g., Orlando Executive Park, Inc. v. Robbins, 433 So.2d 491, 494 (Fla.1983); Robison By and Through Bugera v. Faine, 525 So.2d 903, 906 (Fla. 3d DCA 1987). Nor is there any record evidence which might justify a departure from the general rule that the Ruizes' broker himself was the agent of the insured, and not the insurer. See T & R Store Fixtures, Inc. v. Travelers Insurance Co., 621 So.2d 1388 (Fla. 3d DCA 1993); Ivey v. Hull & Co., 458 So.2d 439 (Fla. 2d DCA 1984).
*1339 For these reasons we find that summary judgment was properly entered in this case.
Affirmed.
NOTES
[1] There is no record evidence that the Ruizes' agent, Bates, ever received a copy of the Notice of Cancellation mailed to the Ruizes.
[2] There is also no record evidence that Biscayne ever informed Bates of the termination of its agency relationship with Fortune.
[3] Indeed, the Ruizes' inexplicable failure to inform their agent of Fortune's decision not to renew their policy and of the termination of Fortune's agency relationship with Biscayne is the sole cause of the unfortunate sequence of events which resulted in the losses of which they now complain.