691 So.2d 525 (1997)
Donald L. STEELE, Appellant,
v.
JACKSON NATIONAL LIFE INSURANCE COMPANY, et al., Appellee.
No. 95-1956.
District Court of Appeal of Florida, Fifth District.
March 27, 1997.
Bruce A. Walkley of Walkley & Walkley, Tampa, for Appellant.
Jack W. Shaw and Michael J. DeCandio of Brown, Obringer, Shaw, Beardsely & DeCandio, Jacksonville, for Appellee.
THOMPSON, Judge.
Donald L. Steele ("Steele") appeals the final summary judgment in favor of Jackson National Life Insurance Company ("JNL"). JNL denied Steele's claim to the proceeds of the life insurance policy on Laura Jean Steele, his deceased wife, on the ground that in her application Laura failed to disclose that she had been treated and hospitalized for paranoid schizophrenia. We affirm.
*526 In about February 1986, according to Steele's deposition, Steele and Laura decided to obtain additional insurance on their lives. Initially, they contacted George Stanberry, who represented an insurer not involved in this case. As part of the application process the Steeles were examined by a nurse. Stanberry obtained the policies for the Steeles. When the policies arrived, however, the Steeles declined the policies because they were not for the amount requested and because the requested accidental death rider had been omitted from Laura's policy. Stanberry directed them to Daniel Middleton, who, Stanberry said, could get them the coverage they wanted at a cheaper price.
The Steeles met with Stanberry and Middleton in Middleton's office on 15 May 1986 and the applications were completed. Middleton testified he selected JNL from several insurers that he was authorized to represent because he considered JNL aggressive and more lenient in approving policy applications.
Middleton testified that either he or Stanberry filled out the Steeles' applications, that every question on the application was read to the Steeles, that all responses were accurately recorded, and that no mention was made of Laura's having received any psychiatric treatment. Stanberry also stated that he was never told of Laura's mental hospitalizations or treatment. Middleton recalled some discussion regarding an insurance physical examination which resulted in the application being changed.
As noted by the trial court in its preliminary order, the application contained the following questions and responses:
Question 6a asks, "During the past five years have you: Consulted, been examined or been treated by any physician or practitioner?" This question was answered "yes." The application provides space for an explanation of all "yes" answers. This was the only question which was answered "yes" and the only explanation provided was "exam. for ins." [the policy obtained by Stanberry] by an R.N.
Question 6c asks, "During the past five years have you: Had observation or treatment at a clinic, hospital or sanitarium?" This question was answered "no."
Question 7a asks, "To the best of your knowledge have you ever had or been told you had: epilepsy, fainting spells, nervous or mental condition, neuritis, paralysis, or any disease or abnormality of the brain or nervous system?" This question was answered "no."
In fact, according to Steele, he was aware that Laura had been diagnosed with paranoid schizophrenia and had been hospitalized for psychiatric treatment five times, the most recent hospitalization having been in August 1985, or nine months before the date of the application, when her mother had her involuntarily committed. Steele testified that he told Middleton and Stanberry of his wife's mental condition, and that Middleton responded that a history of emotional or psychiatric problems was not significant to the insurer and need not be included in the application. JNL offered testimony that the company's protocol would not allow coverage on any basis for a person who had more than one recurrence of schizophrenia. Had JNL known about the multiple hospitalizations of Laura, JNL would not have issued the policy but would have declined her application.
Laura Steele drowned on 24 August 1986, about three months after the application was submitted. Steele submitted a claim which was denied by JNL on 24 November 1986 based on its contention that the application contained material misrepresentations. See § 627.409, Fla. Stat. (1985).[1]
*527 Steele filed his second amended complaint on 15 July 1994 seeking damages from JNL, Middleton & Associates, and Middleton personally.[2] As affirmative defenses, JNL alleged that Steele was barred from recovering under the policy because of material misrepresentations, and because the death of Steele's wife was the result of his intentional act by "an aggressive act or agency." JNL filed motions for partial summary judgment that the misrepresentations were material and that Middleton was acting as the Steeles' agent when he processed the applications. The court granted the motions and entered summary judgment for JNL. The trial court quoted several portions of the agreement between Middleton and JNL and determined that Middleton was Laura's agent when he procured the insurance. The trial court found that Middleton was a self-employed independent insurance agent who operated as a sole proprietor representing several insurance companies, including JNL.
Middleton was an independent, as opposed to captive, insurance agent. See Quirk v. Anthony, 563 So.2d 710 (Fla. 2d DCA) (captive agent is one licensed to sell coverage for only one carrier, whereas independent agent licensed to sell coverage for several carriers), approved, sub nom., Travelers Insurance Co. v. Quirk, 583 So.2d 1026 (Fla.1991). The general rule is that an independent agent or broker acts on behalf of the insured rather than the insurer. T & R Store Fixtures, Inc. v. Travelers Ins. Co., 621 So.2d 1388 (Fla. 3d DCA 1993),; AMI Ins. Agency v. Elie, 394 So.2d 1061, 1062 (Fla. 3d DCA 1981) (general rule is that insurance broker is agent for insured in matters connected with procurement of insurance). In the absence of special circumstances, the broker will be considered the agent of the insured as to matters connected with the application and the procurement of the insurance, despite the fact that the broker receives his or her compensation from the insurer. Lee R. Russ, Couch on Insurance (3d ed. 1995) s 45:4; 16 Appleman, Insurance Law and Practice s.8730 (1981) (general rule is that notice to or knowledge of broker as to facts or matters pertaining to risk or coverage, while imputable to insured, is not imputable to insurer). Auto-Owners Insurance Co., v. Yates, 368 So.2d 634 (Fla. 2d DCA), cert. denied, 378 So.2d 351 (Fla.1979).
However, an independent insurance agent can be the agent of the insurance company for one purpose and the agent of the insured for another. See Glynn v. New Hampshire Insurance Co., 578 So.2d 36 (Fla. 4th DCA 1991). In the instant case, under his contract with JNL, Middleton did not have actual authority to issue a policy, or to bind JNL to a contract. The JNL contract provided:
The Agent shall have no authority, on behalf of the Company to make, alter or discharge any contract or any of the terms, rates or conditions of the Company's policies or contracts; nor to waive the performance of any of the terms or conditions of any policy or other contract to which the Company is a party; nor to bind the Company on account of any indebtedness; nor to bring or defend any suit involving the Company; nor to receive any money payable to the Company except (1) for the first premium on applications for insurance obtained by him and for (2) such premiums as he may be specifically authorized to collect.
* * * * * *
The Company shall at all times have the right to reject, cancel or postpone any application for insurance without specifying the reason therefor....

*528 If a deposit accompanied a life insurance application, a circumstance that does not obtain in the instant case, JNL would be bound to insure the applicant until JNL reviewed the application and either rejected it or accepted it. This exception did not give Middleton any actual authority other than to temporarily bind JNL to a life policy when a deposit accompanied an application.
Acts of an insurance agent within the scope of his apparent authority are binding upon his principal, and the general public may rely thereon and do not need to inquire as to the special powers of the agent, unless circumstances are affirmatively such as to put them on notice to inquire. See e.g. Gaskins v. General Insurance Company of Florida, 397 So.2d 729 (Fla. 1st DCA 1981); Russell v. Eckert, 195 So.2d 617 (Fla. 2d DCA 1967); T & R Store Fixtures (ordinary rule applies where no evidence insurer gave broker actual or apparent authority to collect premiums).
In the instant case we hold that the questions on the insurance application, specifically asking whether Laura Steele had been treated at a hospital within the previous five years or had been told she had a nervous or mental condition, put her on notice to inquire with respect to Middleton's authority to explain whether her medical history would be "significant" to the insurer, where she had been diagnosed a paranoid schizophrenic and had been hospitalized for psychiatric treatment five times, the most recent being involuntary and within months of making the application. See Murphy v. John Hancock Mut. Life Ins. Co., 213 So.2d 275 (Fla. 3d DCA 1968); cf., Gaskins; Russell. Thus, even if Middleton was JNL's agent for some purposes, and even if he had apparent authority for some purposes, the Steeles were on notice to inquire as to the scope of Middleton's authority and could not rely on his alleged statement that Laura's diagnosis, treatment, and hospitalization were not significant to JNL. Furthermore, we decline to extend Travelers Insurance Co. v. Quirk to the facts of the instant case.
The other issues raised on appeal being moot or without merit, the final summary judgment in favor of JNL is affirmed.
AFFIRMED.
GRIFFIN, J., concurs.
W. SHARP, J., concurs in result only.
NOTES
[1] Section 627.409 provides in part:

627.409 Representations in applications; warranties.
(1) All statements and descriptions in any application for an insurance policy or annuity contract, or in negotiations therefor, by or in behalf of the insured or annuitant, shall be deemed to be representations and not warranties. Misrepresentations, omissions, concealment of facts, and incorrect statements shall not prevent a recovery under the policy or contract unless:
(a) They are fraudulent;
(b) They are material either to the acceptance of the risk or to the hazard assumed by the insurer; or
(c) The insurer in good faith would either not have issued the policy or contract, would not have issued it at the same premium rate, would not have issued a policy or contract in as large an amount, or would not have provided coverage with respect to the hazard resulting in the loss, if the true facts had been made known to the insurer as required either by the application for the policy or contract or otherwise.
[2] This record does not show what happened during the years between the denial of the claim and the filing of the second amended complaint, except that Middleton's deposition was taken in a criminal case against Steele, and statements by Steele's counsel indicate Steele may have been prosecuted for making false statements in applying for insurance. It also appears that the charges may have been dropped when it could not be proved that it was Steele who made the misrepresentations.