Christopher WIMBERG, Yvette Yaklich,
and John Yaklich, Jr., Plaintiffs,

v.

William Paul CHANDLER, Defendant.

In the Matter of the Complaint of W.
Paul CHANDLER and Teresa C.
Chandler, etc.

PROGRESSIVE AMERICAN
INSURANCE CO.,
Plaintiff,

v.

William Paul CHANDLER; Christopher
Wimberg; Yvette Yaklich; and John
Yaklich, Jr., Defendants.

Nos. 95–236–Civ–Oc–JES, 97–71–Civ–Oc–
JES and 96–188–Civ–Oc–JES.

United States District Court,
M.D. Florida,
Ocala Division.

Nov. 5, 1997.

Thomas T. Trettis, Jr., Law Office of Thomas T. Trettis, Naples, FL, M. Richard Mellon, Law Office of M. Richard Mellon, Naples, FL, E. Raymond Shope, II, Shope, Mellon & Assoc., Naples, FL, for Christopher Wimberg, Yvette Yaklich, John Yaklich, Jr.

Alan Keith Ragan, Marks, Gray, Conroy & Gibbs, P.A., Jacksonville, FL, for Teresa C. Chandler, W. Paul Chandler.

Terence Robert Perkins, Monaco, Smith, Hood, Perkins, Loucks & Stout, Daytona Beach, FL, for Progressive American Ins. Co.

Alan Keith Ragan, Marks, Gray, Conroy & Gibbs, P.A., Jacksonville, FL, Walter A. Ketcham, Jr., Grower, Ketcham, More, Rutherford, Noecker, Bronson, Siboni & Eide, P.A., Orlando, FL, for William Paul Chandler.

## OPINION AND ORDER

STEELE, United States Magistrate Judge.

A bench trial was held on October 1, 1997, in Ocala, Florida in *Progressive American Insurance Co. v. William Paul Chandler, Christopher Wimberg, Yvette Yaklich and John Yaklich. Jr.,* Case Number 96–188–Civ–Oc–JES. Progressive American Insurance Company (Progressive) seeks a declaratory judgment concerning the coverage, if any, under an insurance policy issued to defendant W. Paul Chandler for a Douglas Skater boat. The parties stipulated to the admissibility of certain depositions, and the Court has considered the deposition testimony of Gerry Murphy, William Paul Chandler, and Elizabeth McGregor. Additionally, the Court heard testimony from Mr. Chandler, Mr. Alfred L. Davis, Ms. Murphy, and Ms. McGregor.

## I. Findings of Fact

1. On May 10, 1994, William Paul Chandler (Chandler) purchased a used 24′ 3″ fiberglass boat manufactured by Douglas Marine from Ronald Abbott in New York. The boat was a twin hull 1987 Skater model with two 150 horsepower Mercury outboard engines. This boat will be referred to as "the Douglas Skater".

2. Chandler has approximately 30 years of boating experience.

3. Chandler obtained insurance coverage for the Douglas Skater from a company unrelated to this action. In late August, 1994 Chandler began looking for another insurance company to provide coverage for the Douglas Skater because the original company was not going to renew the policy. Chandler placed telephone calls to several insurance agents prior to finding Sihle & Williamson Insurance Inc. (Sihle & Williamson) in the telephone directory.

4. On a date shortly before September 6, 1994, Chandler (or his wife) called Sihle & Williamson, a company with whom he had never done business, and informed agent Alfred L. Davis (Davis) he was looking for new insurance for the Douglas Skater. Davis requested various information, which Chandler provided. Chandler stated the year, make, model, hull number, and value of the boat. He also advised that the boat was 24 feet long and had two 150 horsepower outboard engines. Davis asked the top speed and the cruising speed of the boat. Chandler replied that the boat could reach a maximum speed in excess of 70 miles per hour and had a cruising speed of 65 miles per hour.

5. Davis submitted this information to U.S. Specialty Insurance Company for a quote, but the company declined to issue a quote.

6. Davis' associate, Norma Jean Butler, thereafter contacted Progressive and relayed the information provided by Chandler. Sihle & Williamson typically obtains information from the applicant and then calls Progressive to obtain a price for the insurance and a quote number. If the applicant decides to accept the quoted price, the quote number is placed on the application, the person signs the application and pays the quoted premium. Progressive is not bound to issue the insurance simply because there is a quote number issued. Progressive generally issues the insurance policy unless there is intervening information or a discrepancy which causes it not to do so.

7. In this case the Progressive representative prepared a worksheet which stated the Douglas Skater had a single 150 horsepower outboard engine and a maximum speed of 65 miles per hour. Progressive quoted a price of $764.00 to insure the Douglas Skater and gave a quote number. Plaintiff's Exhibit 5.

8. Davis conveyed the Progressive price quotation to Chandler by telephone, and Chandler accepted because it was one of the best he had received. Chandler's acceptance was not binding upon Progressive and there was no coverage at that time.

9. Davis then prepared the Florida 1994 Pleasure Boat and Personal Watercraft Insurance Application (the Application) (Ex. # 5), which is a Progressive form. Included on the Application is a box for "Max. Speed" in which Davis wrote "65". The Application was mailed by Sihle & Williamson to the Chandlers to sign and return.

10. Upon receipt of the Application, Mr. Chandler looked at it but did not actually read it. Chandler either did not note the 65 miles per hour in the maximum speed box or noted it and assumed the number related to the maximum cruising speed. Chandler and his wife signed the Application on September 6, 1994, and mailed it and the premium of $764.00 to Sihle & Williamson.

11. Progressive received the signed Application on September 12, 1994. Progressive relies solely upon the information given in an application to determine whether the vessel comes within its underwriting guidelines. In this case Progressive relied solely upon the information contained in the Application to decide the boat came within its underwriting guidelines and to issue the insurance coverage for the boat. At the time the Policy was issued Progressive conducted no inquiry or investigation as to the speed capacity of the Douglas Skater.

12. Progressive issued policy number 01284624–0 (the Policy) to the Chandlers, which provided insurance coverage for one year effective September 6, 1994. Plaintiff's Exhibit 7. Progressive realized there should have been a 50% surcharge because seventy percent of the Douglas Skater's two engines had a combined horsepower in excess of 190 horsepower. Progressive billed the Chandlers an additional $382.00, which was paid by the Chandlers with a credit card. Plaintiff's Exhibit 8.

13. The Policy on the Douglas Skater contained a provision which stated: "We can void this policy if you, any insured person, or anyone acting on your behalf, has concealed, hidden, omitted, falsified, or misrepresented any material fact. We may void this policy if there is any fraud or attempted fraud concerning any matter regarding the policy or application, whether before or after a loss or accident." Plaintiff's Exhibit 7, page 29.

14. At all times material to this case Progressive had an internal policy which prohibited insuring boats "capable of speeds over 70 mph." Plaintiff's Exhibit 4. The speed of watercraft in excess of 70 miles per hour was material to the acceptance of the risk, and Progressive would in good faith not have issued the Policy had the Chandlers' Application stated that the maximum speed of the Douglas Skater was in excess of 70 miles per hour.

15. Chandler did not know that Progressive had an internal policy of not insuring boats which could travel in excess of 70 miles per hour.

16. On July 29, 1995, Chandler demonstrated the Douglas Skater to a prospective buyer, Christopher Wimberg (Wimberg). The following people were on board the Douglas Skater: Chandler, Wimberg, Yvettte Yaklich (Mr. Wimberg's fiancee), and John Yaklich, Jr. (Yvette's brother). At approximately 5:30 p.m. the vessel was roughly 500 feet south of navigational marker 24 on the St. Johns River, with Chandler at the helm. The boat either veered starboard in order to negotiate a right hand turn in the river and struck the shore, or first struck a submerged tree and then careened into the shore. All the passengers have sued Chandler for negligence.

17. Chandler reported the accident to Progressive the next day. By August 15, 1995, Andy Wieland, a Progressive claims appraiser, inspected and photographed the boat and spoke with Chandler. Chandler advised Wieland that he had told the insurance sales agent (Davis) that his boat could travel faster than 70 miles per hour. Wieland made a notation in the claims file that "the engines seemed large" and that "somebody should follow up on the speed of the boat." In response to that notation, Progressive employees reviewed the Application and observed that the maximum speed was listed as 65 miles per hour. No further investigation was performed by Progressive, and the boat was not tested for speed.

18. The Policy on the Douglas Skater was renewed by Progressive for another year effective September 6, 1995. The Chandlers paid the $1,244.00 premium. Plaintiff's Exhibit 10.

19. On November 8, 1995, attorney Richard Mellon sent Progressive's Elizabeth McGregor a copy of an article about a Douglas Skater, Plaintiff's Exhibit 1, and photographs of the Douglas Skater's engines. The article indicated to Ms. McGregor that the boat may be capable of exceeding 70 miles per hour, and she therefore discussed the matter with her manager and legal department. She requested that Progressive follow up with Chandler about the speed, but did not know if this was done.

20. On November 22, 1995, McGregor issued a reservation of rights letter on behalf of Progressive to the Chandlers. The letter was predicated upon review of the information in the article provided by Mr. Mellon and stated in part:

We have uncovered some information in reference to the maximum speed capacity of your 1987 Douglas Skater indicating that it may not be a vehicle qualified to be insured within Progressive's Pleasure Boat Program. Our understanding in the statement we obtained from you that you disclosed to the agent that the boat maximum speed capacity was 70 MPH. The copy of the application completed and signed by

you indicates that the speed disclosure for maximum limit was 65 MPH. Progressive's Pleasure Boat Program does not insure boats with the maximum speed in excess of 70 MPH. Based on your boat model and its equipped engine, the information that we have received would suggest that your boat has a speed capacity well in excess of 70 MPH.

Plaintiff's Exhibit 12.

21. No additional investigation as to the speed of Chandler's Douglas Skater was thereafter conducted by Progressive.

22. Sometime between August 16, 1995, and the November 22, 1995 reservation of rights letter Progressive paid medical benefits to individuals who were involved in this accident.

23. On March 23, 1996, the Chandlers wrote Progressive that the insurance coverage was no longer needed. Plaintiff's Exhibit 13. The coverage was not needed because the Chandlers had sold the boat. Progressive cancelled the policy and refunded $509.00 as the unearned premium. Plaintiff's Exhibit 14. No other refund was made at this time.

24. On June 17, 1996, at the direction of its attorney, Progressive declared the Chandlers' insurance policy null and void from its September 6, 1994, inception and refunded premiums of $1,881.00. Plaintiff's Exhibit 16. This was all the premiums paid by the Chandlers. The Chandlers have not cashed this check. The Policy was declared null and void because of the statement on the Application that the boat had a maximum speed of 65 miles per hour.

25. Chandler had never had the boat traveling faster than 70 miles per hour, but believed the boat could go in excess of 70 miles per hour because it was a high performance boat with a style built for speed, and his research and understanding that all Douglas boats are high performance vessels which are capable of exceeding 70 miles per hour. Chandler testified at his deposition that while he did not know the exact maximum speed of the boat, he estimated it at 70 or 80 miles an hour. At trial Chandler testified he believes his Douglas Skater could

exceed 80 miles per hour. He had demonstrated the boat to Wimberg and reached speeds of 60–70 miles per hour and had more capacity left.

26. The Douglas Skater was capable of speeds in excess of 70 miles per hour.

27. Chandler admits that the representation on the Application that 65 miles per hour was the maximum speed is not an accurate statement.

28. No reason existed to declare the Policy null and void other than the alleged material misrepresentation as to the maximum speed of the Douglas Skater.

29. Additional facts are set forth below as they relate to specific issues.

## II. Conclusions of Law

30. Progressive claims that the Douglas Skater was capable of speeds in excess of 70 miles per hour; that Chandler's Application misrepresented that the boat's maximum speed was 65 miles per hour; that Progressive did not insure watercraft that were capable of speeds in excess of 70 miles per hour; and that Progressive would not have insured the Douglas Skater had the true maximum speed been listed on the Application. Progressive asserts that due to the misrepresentation, the Policy was null and void from its inception.

### (1) Recission of Policy Under Fla.Stat. § 627.409:

31. Progressive seeks to avoid coverage on the Douglas Skater based upon Florida Statute § 627.409. This statute, re-written in 1992, states in relevant part:

Any statement or description made by or on behalf of an insured ... in an application for an insurance policy ... is a representation and not a warranty. A misrepresentation, omission, concealment of fact, or incorrect statement may prevent recovery under the contract or policy only if any of the following apply:

(a) The misrepresentation, omission, concealment, or statement is fraudulent or is material either to the acceptance of the risk or to the hazard assumed by the insurer.

(b) If the true facts had been known to the insurer pursuant to a policy requirement or other requirement, the insurer in good faith would not have issued the policy or contract . . .

32. "Where a misrepresentation occurs that meets the requirements of § 627.409 the insurer, as a matter of right, may unilaterally rescind." *Fabric v. Provident Life & Acc. Ins. Co.,* 115 F.3d 908, 913 (11th Cir.1997). Additionally, under this statute "[a] material misrepresentation in an application for insurance, whether or not made with knowledge of its correctness or untruth, will nullify any policy issued and is an absolute defense to enforcement of the policy." *Motors Insurance Corporation v. Marino,* 623 So.2d 814, 815 (Fla. 3rd DCA 1993).

### (a) Materiality of Statement About Maximum Speed:

■ 33. It is undisputed that Chandler and his wife signed the Application and that it states the maximum speed of the Douglas Skater was 65 miles per hour. Chandler is bound by the representation in the Application and may not defend on the ground that he did not read it or did not read it accurately. *RLI Ins. Co. v. Collado,* 678 So.2d 1313, 1315 (Fla. 2nd DCA 1996).

34. The Court has found as a matter of fact that the speed of a watercraft in excess of 70 miles per hour was material to the acceptance of the risk, and Progressive would in good faith not have issued the Policy had the Application stated that the maximum speed of the Douglas Skater was in excess of 70 miles per hour. *See* paragraph 14.

35. If materiality is a question of law, *de Guerrero v. John Hancock Mutual Life Ins. Co.,* 522 So.2d 1032, 1033 (Fla. 3rd DCA 1988); *Minnesota Mutual Life Insurance Co. v. Candelore,* 416 So.2d 1149, 1150 (Fla. 5th DCA 1982), the Court concludes that under the facts of this case the capability of the Douglas Skater to exceed 70 miles per hour was material.[1]

### (b) Proof of Speed Capability:

■ 36. Defendants argue, however, that Progressive has failed to prove that the 65 miles per hour was a misrepresentation because Progressive failed to prove that the boat could actually travel over 70 miles per hour.

37. An insurer has the burden of proving the material misrepresentation by a preponderance of the evidence; the question of whether there was a misrepresentation is a question of fact. *See Anderson v. Armor Insurance Co.,* 674 So.2d 174 (Fla. 2nd DCA 1996). Defendants argue that while Chandler *believed* his boat would go over 70 miles per hour, there was no proof of this fact.

38. As set forth in paragraph 26 above, the Court finds that Progressive has met this burden and established the Douglas Skater had the capability for speeds in excess of 70 miles per hour. Progressive's burden of proof was satisfied by the configuration of the boat, the size of the two engines, the performance reputation of Douglas Skaters, Chandler's research on Douglas Skaters, Chandler's opinion based upon 30 years boating experience, and the actual driving of the boat to 60–70 miles per hour without reaching the limit of its capability.

### (c) Disclosure of Correct Speed To Progressive's Agent:

■ 39. Defendants next argue that even if the boat could exceed 70 miles per hour, there was no misrepresentation because Chandler told Progressive's agent, Alfred Davis, that the vessel could travel over 70 miles per hour. The Court has made a factual finding that Chandler did indeed tell Davis the speed of the boat was over 70 miles per hour. *See* paragraph 4. "Facts within knowledge of an authorized representative of the insurer while acting within the proper scope of his authority is knowledge of the insurance company." *Gonzalez v. Great Oaks Cas. Ins. Co.,* 574 So.2d 1182, 1185 (Fla. 3rd DCA 1991).

40. Progressive argues, however, that Davis was not its agent during the applica-

---

**1.** Whether the boat was capable of speeds between 65 and 71 miles per hour is not material since Progressive would issue policies for such watercraft.

tion process. Therefore, Progressive asserts, even if Chandler told Davis the true maximum speed it did not constitute knowledge by Progressive.

41. "The question of agency is one of fact to be determined by the trier of fact and the burden of proof is on the party who asserts it." *Boulton Agency, Inc. v. Phoenix Worldwide Industries, Inc.,* 698 So.2d 1248 (Fla. 3rd DCA 1997) (citing *Bernstein v. Dwork,* 320 So.2d 472, 474 (Fla. 3rd DCA 1975)). Since defendants assert that Davis was the agent of Progressive, defendants have the burden of establishing this fact.

42. The Court finds that Davis was an independent agent or broker. The Florida definition of an insurance broker was set forth in *RLI Ins. Co. v. Collado,* 678 So.2d at 1315–16:

An "insurance broker" is one who acts as middleman between the insured and the insurer, and who solicits insurance from the public under no employment from any special company, and who, upon securing an order, places it with a company selected by the insured, or, in the absence of such a selection, with a company selected by himself; whereas an "insurance agent" is one who represents an insurer under an employment by it. Whether a person acts as a broker or agent is not determined by what he is called but is to be determined from what he does. In other words, his acts determine whether he is an agent or a broker.

When Chandler requested insurance coverage, Davis searched for a suitable insurance carrier with at least one firm other than Progressive. He would have written the insurance with this company if the firm agreed to write the policy and Chandler had accepted its price. It is apparent that Davis had the ability to sell insurance from more than one insurance company, which is indicative of a broker or independent agent. *Quirk v. Anthony,* 563 So.2d 710, 715–16 (Fla. 2nd DCA 1990); *Steele v. Jackson National Life Insurance Company,* 691 So.2d 525, 527 (Fla. 5th DCA 1997); *Boulton Agency, Inc. v. Phoenix Worldwide Industries, Inc.,* 698 So.2d 1248 (Fla. 3rd DCA 1997).

43. An independent agent or broker can be the agent of either the insurer or the applicant. *Steele v. Jackson National Life Insurance Company,* 691 So.2d at 527 recently summarized the appropriate rules:

The general rule is that an independent agent or broker acts on behalf of the insured rather than the insurer. In the absence of special circumstances, the broker will be considered the agent of the insureds as to matters connected with the application and the procurement of the insurance, despite the fact that the broker receives his or her compensation from the insurer. However, an independent insurance agent can be the agent of the insurance company for one purpose and agent of the insured for another.

(Citations omitted).

44. The Court finds no special circumstances which would preclude Davis from being the agent of Chandler during the application process. Chandler was on notice that he was dealing with someone who was not the agent of Progressive. At the time of the insurance application, Davis was working for Sihle & Williamson Insurance Inc., not Progressive. Additionally, when Mr. or Mrs. Chandler called Davis, he informed them that he would have to call around to find a policy for them.

45. The Court holds that Davis was an insurance broker and was acting as the agent of Chandler during the application process. Accordingly, Chandler's statements to Davis were not disclosure to Progressive. The misrepresentation that the maximum speed was 65 miles per hour was made in an application signed by the Chandlers, and Progressive is not deemed to have knowledge of Chandler's statement to Davis that the boat could exceed 70 miles per hour.

**(d) Progressive's Less Stringent Requirements:**

46. Defendants argue that an insurer such as Progressive may enforce less stringent standards than required by Florida Statute § 627.409, and that Progressive has such less stringent standards with regard to watercraft. Specifically, defendants argue that the application form listed six bases to

void the policy, none of which were the making of a material misrepresentation. Defendants rely upon cases which have held that where an application states it is made to be best of the applicant's knowledge and belief the insurer has adopted a less stringent requirement of accuracy than provided under § 627.409. *Carter v. United of Omaha Life Ins.*, 685 So.2d 2, 6–7 (Fla. 1st DCA 1996) [2]; *Hauser v. Life General Sec. Ins. Co.*, 56 F.3d 1330, 1333–35 (11th Cir.1995).

47. In this case Progressive has not adopted a less stringent requirement of accuracy. The application is silent as to the requirement of accuracy, and therefore the Florida statute provides the standard. "An insurer is entitled, as a matter of law, to rely upon the accuracy of the information contained in the application ..." *Independent Fire Ins. Co. v. Arvidson*, 604 So.2d 854, 856 (Fla. 4th DCA 1992). The application's listing of some of the reasons which will void an insurance policy does not preclude the obligation of accuracy. Additionally, as noted in paragraph 13 above, the Policy specifically stated it could be found null and void for material misrepresentations.

48. There is no less stringent standard for accuracy which could be of any avail to defendants. Since Chandler has conceded that he always believed the boat could exceed 70 miles per hour, there is no less stringent standard which would excuse the misrepresentation except one which condoned falsity. Defendants have not established that Progressive had a standard which allowed false statements in its applications.

49. The Court concludes that Progressive has not adopted a less stringent standard of accuracy than provided by Florida law, and that even under the least stringent standard recognized by case law the statement on the Application is a misrepresentation.

**(e) Duty to Inquire or Investigate:**

■ 50. Defendants also argue that Progressive could not rely upon the misrepresentation because it had a duty to investigate the accuracy of the Application. Defendants

assert Progressive was placed on notice that the speed of such a boat with the two engines might exceed 70 miles per hour. It is clear, however, that "[a]n insurer is entitled, as a matter of law, to rely upon the accuracy of the information contained in the application and has no duty to make additional inquiry." *Independent Fire Ins. Co. v. Arvidson*, 604 So.2d at 856. Defendants' argument is without merit.

**(f) Conclusion Regarding Florida Statute § 627.409:**

51. The Court finds that Chandler, in his signed, written Application, made a misrepresentation to Progressive which was material to the acceptance of the risk, and that Progressive would in good faith not have issued the Policy if the true facts about the capability of the boat to exceed speeds of 70 miles per hour had been known to it.

52. Because Progressive has established the requirements of § 627 .409, it had the right to rescind the Policy unless prevented from doing so by any of the affirmative defenses.

**(2) Affirmative Defenses:**

53. Defendant raise several affirmative defenses in which they assert Progressive is precluded from voiding of the Policy.

**(a) Claims Administration Statute:**

■ 54. Defendants argue that Progressive has failed to comply with Florida Statute § 627.426(2) which regulates Florida's insurance claims administration, and therefore cannot declare the Policy null and void. The statute provides that a liability insurer shall not be permitted to deny coverage based on a particular coverage defense unless it first takes certain actions within certain time limitations. Progressive arguably failed to take the required actions within the required time periods.

55. In light of the Court's finding that there was a material misrepresentation in

---

**2.** The Court notes that this case is in conflict with *Green v. Life & Health of America*, 692 So.2d 220 (Fla.App. 4th DCA 1997), and that

review of this conflict was granted by the Florida Supreme Court on September 30, 1997. *See* 22 Fla.L. Weekly Num. 40, ii (Oct. 10, 1997 Fla.)

the Application, this affirmative defense is not available to defendants.

The finding by the trial court that there had been a material misrepresentation renders the policy null and void from the date of inception. Thus, adherence *vel non* to the strictures of the Claims Administration Statute is irrelevant.

*Progressive American Insurance Company v. Papasodero*, 587 So.2d 500, 502 (Fla. 2nd DCA 1991), *rev. denied*, 598 So.2d 77 (Fla. 1992). *See also Independent Fire Insurance Company v. Arvidson*, 604 So.2d at 857.

### (b) Estoppel:

■ 56. Defendants also argue that Progressive is estopped from rescinding the policy because of the position expressed by its representative, Elizabeth McGregor. McGregor testified that upon learning of a material misrepresentation concerning a policy in existence for more than 60 days, Progressive would have selected a date in the future to cancel the policy and sent the insured a notice that the policy was cancelled as of that date.

57. Assuming this opinion is binding on Progressive, it is not estopped from rescinding the Policy. "To be entitled to equitable estoppel, a party must show that there was a representation as to a material fact that is contrary to a later asserted position, reliance on that representation, and a change in position detrimental to the party claiming estoppel caused by the representation and reliance thereon." *Independent Fire Ins. Co. v.. Arvidson*, 604 So.2d at 857. There is no indication that McGregor's position was communicated to Chandler until her deposition, or that he relied upon it in what he did or did not do. Therefore, no estoppel has been shown. *American States Ins. Co. v. McGuire*, 510 So.2d 1227, 1229 (Fla. 1st DCA 1987).

### (c) Waiver:

■ 58. Defendants also assert that Progressive has waived its right to rescind the Policy because it paid medical benefits to the passengers of the boat, renewed the Policy on September 6, 1996, and kept the premiums until June, 1997.

59. It is well established Florida law that "a forfeiture of rights under an insurance policy is not favored by the law, especially where, as here, a forfeiture is sought after the happening of the event giving rise to the insurer's liability." *Johnson v. Life Ins. Co. Of Georgia*, 52 So.2d 813, 815 (Fla.1951). *See also LeMaster v. USAA Life Ins. Co.*, 922 F.Supp. 581, 585 (M.D.Fla.1996).

■ 60. "The elements of waiver are: (1) the existence at the time of the waiver of a right, privilege, advantage, or benefit which may be waived; (2) the actual or constructive knowledge of the right; and (3) the intention to relinquish the right." *Leonardo v. State Farm Fire and Cas. Co.*, 675 So.2d 176, 178 (Fla. 4th DCA 1996). Phrased differently, "when an insurer has knowledge of the existence of facts justifying a forfeiture of the policy, any unequivocal act which recognizes the continued existence of the policy or which is wholly inconsistent with a forfeiture, will constitute a waiver thereof." *Johnson v. Life Insurance Co. of Georgia*, 52 So.2d at 815.

61. It is clear that the first element of waiver is satisfied. Progressive possessed the right to rescind the Policy due to the material misrepresentation at all times material to this case.

■ 62. The second element of waiver is Progressive's actual or constructive knowledge of this right, which turns on when Progressive knew or should have known of the misrepresentation. "There can be no waiver without knowledge express or implied of that which is to be waived." *Gulf Life Insurance Co. v. Green*, 80 So.2d 321, 322 (Fla.1955). The Court has found that Chandler told Andy Wieland by August 15, 1995, that the Douglas Skater was capable of speeds in excess of 70 miles per hour. Paragraph 17. It is not disputed that Wieland was the agent of Progressive. This knowledge is therefore imputed to Progressive, which is bound by it. *Johnson v. Life Ins. Co. of Georgia*, 52 So.2d at 815.

63. The third element of waiver is the intention to relinquish the right to rescind the Policy. "... the intention to waive such

rights may be inferred from a deliberate disregard of information sufficient to excite attention and call for inquiry as to the existence of facts by reason of which a forfeiture could be declared." *Johnson v. Life Ins. Co. Of Georgia*, 52 So.2d at 815. While Progressive's attorney argues that a first investigation was conducted without revealing the misrepresentation, this is not borne out by the record. Not only did Chandler tell Wieland the boat could exceed 70 miles per hour, Wieland made notes in the claim file that "someone should follow up on the speed of the boat." The entirety of the "investigation" was to look at the application; there is no evidence that anyone ever did anything at that time to follow up on the speed capability of a Douglas Skater. A reasonably prudent inquiry would have easily lead to at least the conclusion that the Douglas Skater could exceed 70 miles per hour and that the statement on the Application was a misrepresentation. Progressive is "charged with knowledge of the facts which such an inquiry would have disclosed ..." *Johnson v. Life Ins. Co. Of Georgia*, 52 So.2d at 815.

64. On September 6, 1995, with knowledge of the maximum speed of the boat by August 10, 1995, Progressive renewed the Chandler's policy. Progressive accepted the premium and gave the Chandler's no indication that there was a problem with their coverage. Progressive retained the premium from the Chandlers until March, 1996 when the Chandler's sold the boat and canceled the policy. Progressive then returned only the prepaid unearned policy premiums, but retained all other previously paid premiums. "The acceptance and collection of premiums with constructive notice of facts here relied on as a defense is certainly an unequivocal act which recognizes the continued existence of the policy and which is wholly inconsistent with a forfeiture." *Johnson v. Life Ins. Co. Of Georgia*, 52 So.2d at 815. (internal quotation marks omitted). *Security Life & Trust Company v. Jones*, 202 So.2d 906, 908–09 (Fla. 2nd DCA 1967).

65. The Court finds that Progressive waived its right to rescind the insurance policy by renewing the policy and by accepting and retaining premiums after its agent knew the Douglas Skater could exceed speeds of 70 m.p.h.

Accordingly it is now

**ORDERED AND ADJUDGED:**

1. Defendants' oral motions for directed verdict are **DENIED.**

2. Judgment shall enter declaring that Progressive American Insurance Company waived its right to rescind Policy Number 012846424–0 issued to William Paul Chandler and Teresa C. Chandler and that Progressive American Insurance Company is obligated to provide the coverage provided by that policy.

3. The Clerk shall enter Judgment accordingly, and place a duplicate original in Case No. 96–188–Civ–Oc–JES.