862 So.2d 736 (2003)
AMSTAR INSURANCE COMPANY, Appellant,
v.
Marie CADET, Appellee.
No. 5D02-2673.
District Court of Appeal of Florida, Fifth District.
October 10, 2003.
Rehearing Denied January 14, 2004.
*738 Hinda Klein of Conroy, Simberg, Ganon, Krevans & Abel, P.A., Hollywood, for Appellant.
Charles R. Steinberg of Amari & Theriac, P.A., Cocoa, for Appellee.
SAWAYA, C.J.
Amstar Insurance Company appeals a final summary judgment entered in favor of Marie Cadet, Amstar's purported insured, in Cadet's underlying suit for declaratory relief and breach of contract. Amstar contends that the trial court should have granted its motion for summary judgment and denied Cadet's. We agree and, therefore, reverse the summary judgment entered in favor of Cadet and remand to the trial court for entry of a summary judgment in favor of Amstar.
The issue we must resolve is whether the trial court erred in ruling that Amstar was estopped from asserting cancellation as a coverage defense based on Cadet's contention that the insurance agency from which she purchased the policy, the McClain Agency, acted as agent for Amstar in accepting premium payments from her after the cancellation date.[1] In order to resolve this issue we will determine in the following order whether the McClain Agency was a broker or an insurance agent for Amstar and, if the McClain Agency was a broker, whether it acted as a statutory, actual, or apparent agent of Amstar for purposes of collecting the insurance premium from Cadet. But first, we will discuss the factual and procedural background of the instant case.

Factual And Procedural Background
Cadet purchased the insurance policy from the McClain Agency,[2] which represented at least thirty different insurance companies, including Amstar. Cadet financed the policy premium with Gold Coast Finance, Inc. When the premium was financed, the McClain Agency paid Amstar in full with the financed draft and assumed the responsibility of accepting monthly premium payments from the insured and forwarding those payments to Gold Coast.
Amstar subsequently determined that Cadet's driving record did not meet its underwriting guidelines and, within thirty days of issuance of the policy, it sent both Cadet and the McClain Agency a notice of cancellation, effective January 27, 1997. Amstar then returned Cadet's unearned premium by issuing a refund to Gold Coast.[3]
*739 Cadet failed to obtain insurance through another company and made her premium payments directly to the McClain Agency by checks that referenced her premium finance number. The receipts the McClain Agency issued for each payment noted the fact that the policy premium had been financed with Gold Coast. No reference was made to Amstar. The McClain Agency deposited the payments into its account and issued payment to Gold Coast. Significantly, after Amstar issued its cancellation notice, Amstar never received any premium payments from Cadet, Gold Coast or the McClain Agency. Moreover, Amstar never gave Gold Coast or the McClain Agency any authority to accept any premium payments on its behalf after it cancelled the policy.
Unfortunately for Cadet, on June 16, 1997, she was involved in an automobile accident and subsequently made a claim with Amstar for personal injury protection and collision benefits. Cadet's claim was denied by Amstar, which asserted that the policy had been canceled. Cadet then sued Amstar for declaratory relief and breach of the insurance contract. After the trial court denied Amstar's motion for summary judgment, Cadet filed her motion for summary judgment, which the trial court granted. Hence this appeal.
If the McClain Agency was an insurance agent for Amstar, as Cadet claims, then the McClain Agency's acceptance of the premium payments from Cadet after the policy was cancelled can be attributed to Amstar and may estop Amstar from asserting cancellation as a defense. But if, as Amstar argues, the McClain Agency was a broker, which generally acts as an agent for the insured, the McClain Agency's continued acceptance of the premium payments would not be attributable to Amstar unless it acted in the dual role as a statutory, actual or apparent agent for Amstar for purposes of accepting the premium payments. See Almerico v. RLI Ins. Co., 716 So.2d 774, 776-77 (Fla.1998) (holding that a broker may be a statutory agent for an insurance company pursuant to section 626.342, Florida Statutes (1989), or be clothed with actual or apparent authority so that the broker's acts may be binding on the insurance company) (citations omitted); see also Guarente-Desantolo v. John Alden Life Ins. Co., 744 So.2d 1123, 1125 (Fla. 4th DCA 1999). We must, therefore, first determine whether the McClain Agency was a broker or an insurance agent for Amstar.

Broker Or Insurance Agent
An "insurance broker" is one who solicits insurance orders from the general public and is not bound by contract to work for or solicit insurance for any particular insurance company. Almerico; Boulton Agency, Inc. v. Phoenix Worldwide Indus., Inc., 698 So.2d 1248 (Fla. 3d DCA 1997); Auto-Owners Ins. Co. v. Yates, 368 So.2d 634 (Fla. 2d DCA), cert. denied, 378 So.2d 351 (Fla.1979). Upon receipt of an order, a broker may place it with an insurance company chosen by the insured or one chosen from many companies by the broker. See Boulton; Yates. A broker, therefore, is free to generally act as a conduit or middleman between the insured and one of many insurers chosen by the broker or the insured to issue the policy. Almerico; Boulton. Some courts, including this one, refer to a broker as an "independent insurance agent." Steele v. Jackson Nat. Life Ins. Co., 691 So.2d 525, 527 (Fla. 5th DCA 1997); T & R Store Fixtures, Inc. v. Travelers Ins. Co., 621 So.2d 1388 (Fla. 3d DCA 1993); see also Straw v. Associated Doctors Health & Life, 728 So.2d 354, 357 n. 4 (Fla. 5th DCA 1999). *740 As a general rule, an insurance broker acts as the agent of the insured. See Almerico; Boulton; Great Oaks Cas. Ins. Co. v. State Farm Mut. Auto. Ins. Co., 530 So.2d 1053 (Fla. 4th DCA 1988); AMI Ins. Agency v. Elie, 394 So.2d 1061 (Fla. 3d DCA 1981).[4]
An "insurance agent" is generally one who is contractually obligated to work for and solicit insurance on behalf of a specific insurance company. Elie. Hence, the nature of the relationship between agent and insurer is generally ongoing and continuous, whereas a broker is usually employed by the insured for the specific purpose of procuring, with some insurance company, a policy of insurance. Insurance agents are sometimes referred to by the courts as a "captive agents." Steele, 691 So.2d at 527. Because of the agency relationship, the acts of an insurance agent are generally attributable to and binding upon the insurance company. Hardy v. American S. Life Ins. Co., 211 So.2d 559 (Fla.1968); Johnson v. Life Ins. Co. of Ga., 52 So.2d 813 (Fla.1951); Steele; Essex Ins. Co., Inc. v. Universal Entm't & Skating Ctr., Inc., 665 So.2d 360, 362 (Fla. 5th DCA 1995) ("Knowledge of an insurance agent binds its principal, even if not transmitted to the principal.") (citations omitted); Great Oaks; Gaskins v. General Ins. Co. of Fla., 397 So.2d 729 (Fla. 1st DCA 1981).
Here, the McClain Agency solicited insurance business from the general public and had relationships with numerous insurance companies with which it placed applications for insurance on behalf of its customers. The McClain Agency, on behalf of Cadet, chose Amstar as the insurance company to make application for a policy. Amstar's relationship with the McClain Agency was made clear in its written agreement, which provides that the McClain Agency "has the authority to solicit, receive and transmit applications for insurance contracts for which a commission is specified in the prevailing Commission Schedule." The application that Cadet executed for insurance coverage with Amstar clearly informed Cadet that the McClain Agency did not have authority to bind Amstar to coverage without first obtaining a telephonic binder from Amstar with a corresponding binder number. The application also provided that the McClain Agency had no right to "MAKE, ALTER, MODIFY or DISCHARGE any CONTRACT or POLICY issued on the basis of this application."
Based on the facts and circumstances of the instant case, it is clear that the McClain Agency was an insurance broker that acted as an agent for Cadet. Therefore, the McClain Agency's act of accepting premium payments from Cadet after Amstar cancelled the policy is not binding on Amstar and does not estop Amstar from asserting cancellation as a defense unless the McClain Agency also acted as a statutory, actual or apparent agent for Amstar for the purpose of accepting premium payments.

Statutory Agency
The court in Almerico explained that an insurance broker may become a statutory agent for the insurer under section 626.342(2) if the insurance company furnishes to the broker company materials, such as blank forms, applications, stationery, or other supplies used in soliciting or negotiating insurance contracts, and the *741 insurance company subsequently accepts business from that broker. In this instance, the acts of the broker make the insurance company civilly liable to the insured in the same manner as if the insurer had specifically designated the broker as its agent, unless the insured knew or was put on notice of inquiry regarding limitations that may have been placed on the broker's actual authority. Almerico. The insured may be put on notice if the application for insurance executed by the insured contains provisions that state the limitations placed on the brokers actual authority. Almerico.
Here, Amstar did furnish the McClain Agency with its company materials and it did accept business from the McClain Agency. But the application for insurance executed by Cadet specifically informed Cadet of the limitations placed by Amstar on the McClain Agency's authority. The application states:
The Agent has no authority to bind the company without first obtaining confirmation from the company through a telephonic binder and receiving a corresponding binder number. The agent has no right to make, alter, modify or discharge any contract or policy issued on the basis of this application.
The last sentence is identical to language included in an application for insurance that the court in Almerico found to be sufficient to put an insured on notice of limitations placed on the broker's actual authority to bind the insurance company. Almerico, 716 So.2d at 781 (quoting and approving Brown v. Inter-Ocean Ins. Co., 438 F.Supp. 951 (N.D.Ga.1977)). Hence, even if the McClain Agency was a statutory agent for Amstar, Cadet was effectively put on notice of the limitations placed on its authority to act on behalf of Amstar. Almerico; see also Steele v. Jackson Nat. Life Ins. Co., 691 So.2d 525 (Fla. 5th DCA 1997). Therefore, we are unable to conclude that the McClain Agency's act of accepting payments from Cadet after the policy was cancelled estops Amstar from asserting cancellation as a defense under section 626.342(2). But perhaps the McClain Agency was an actual or apparent agent for Amstar.

Actual Or Apparent Agency
The essential elements necessary to establish an actual agency relationship are (1) acknowledgment by the principal that the agent will act for him, (2) acceptance by the agent of the undertaking, and (3) control by the principal over the agent's actions. Villazon v. Prudential Health Care Plan, Inc., 843 So.2d 842 (Fla.2003); Goldschmidt v. Holman, 571 So.2d 422 (Fla.1990). Generally, a principal may be held vicariously liable for the acts of his or her agent committed within the scope of the agent's real authority. See Daniel v. Florida Residential Prop. & Cas. Joint Underwriting Ass'n, 718 So.2d 936 (Fla. 3d DCA 1998); Warren v. Department of Admin., 554 So.2d 568 (Fla. 5th DCA 1989).
Cadet argues that a written agency agreement entered into between Amstar and the McClain Agency established an actual agency relationship between the two parties and specifically provided that the McClain Agency was authorized to accept premium payments on behalf of Amstar. Although the agreement allows the McClain Agency to collect premiums received for business placed with Amstar, the premium was financed with Gold Coast, which paid Amstar in full. Gold Coast then attempted to collect periodic payments from Cadet. Hence any premium payments received by the McClain Agency from Cadet were on behalf of Gold Coast rather than Amstar.
*742 Moreover, the financing agreement between Cadet and Gold Coast required Cadet to make payments to Gold Coast. When Cadet remitted payment to the McClain Agency, she noted on each payment her premium finance number. The receipts issued by the McClain Agency also referenced the fact that the payment was made in accordance with the financing agreement. We conclude that pursuant to the agreement between Amstar and the McClain Agency, the McClain Agency had no actual authority to collect premium payments for Gold Coast on behalf of Amstar. Even if we were to conclude otherwise, the McClain Agency acted outside the scope of its actual authority when it continued to accept Cadet's premium payments after Amstar cancelled the policy, especially in light of the McClain Agency's acknowledgment that it did actually receive the notice of cancellation from Amstar.
In order to determine the existence of apparent agency, it must be determined that 1) there was a representation by the principal; 2) the injured party relied on that representation; and 3) the injured party changed position in reliance upon the representation and suffered detriment. Almerico. A principal may be liable for the acts of his or her apparent agent that are committed within the scope of the apparent agency. See Life Inc. Co. of N. Am. v. Del Aguila, 417 So.2d 651 (Fla.1982).
There is no dispute that the McClain Agency received the notice of cancellation from Amstar. Moreover, we find nothing in the record that would indicate that Amstar made a representation to Cadet that the McClain Agency had the authority on behalf of Amstar to accept premium payments for Gold Coast. Therefore, when the McClain Agency accepted the premium payments from Cadet, it did so on behalf of Gold Coast, not Amstar. Even if we were to conclude that the McClain Agency had apparent authority to accept the payments on behalf of Amstar, receipt of the notice of cancellation clearly indicates that the McClain Agency acted outside the scope of its apparent authority when it thereafter accepted the payments from Cadet.

Conclusion
We conclude that the McClain Agency was a broker for Cadet and that it did not act as statutory, actual or apparent agent for Amstar when it collected the premium payments from Cadet after Amstar cancelled the policy. Therefore, the acceptance of premium payments by the McClain Agency on behalf of Gold Coast after the policy was cancelled does not estop Amstar from asserting cancellation as a defense. See Ruiz v. Fortune Ins. Co., 677 So.2d 1336 (Fla. 3d DCA 1996); Standard Guar. Ins. Co. v. Furtado, 502 So.2d 1004 (Fla. 5th DCA 1987). Because the policy was effectively cancelled prior to Cadet's accident, Amstar provides no coverage for the incident she was involved in. Hence there are no genuine issues of material fact and Amstar is entitled to judgment as a matter of law. Therefore, we reverse the summary judgment entered in favor of Cadet and remand this case to the trial court to enter summary judgment in favor of Amstar.
REVERSED AND REMANDED.
SHARP, W. and PLEUS, JJ., concur.
NOTES
[1] Cadet argues that she did not receive the notice of cancellation. We will not decide this issue because it was not raised in the trial court. See Cowart v. City of West Palm Beach, 255 So.2d 673 (Fla.1971) (holding that an appellate court may not consider an issue not presented to the trial judge on appeal from final judgment on the merits); J.T.A. Factors, Inc. v. Philcon Servs., Inc., 820 So.2d 367 (Fla. 3d DCA 2002).
[2] The McClain Agency is also known as AA Auto Insurance of West Orlando.
[3] Upon cancellation of the policy, Amstar refunded the unearned premium to Gold Coast pursuant to the premium finance agreement whereby Gold Coast was assigned the right to receive refunded premiums from any insurer covering Cadet. Cadet's reliance on Bankers Insurance Company v. General No-Fault Insurance, Inc., 814 So.2d 1119 (Fla. 4th DCA), review denied, 835 So.2d 265 (Fla.2002), is misplaced. Bankers held that pursuant to section 627.7282(1)(c), Florida Statutes (2000), the refund of premiums must be made to the insured rather than the premium finance company. However section 627.7282, which deals with an incorrect premium charge, is not applicable to the instant case. Therefore, we conclude that Cadet's argument that the premium refund should have been made to Cadet under Bankers is unavailing.
[4] There are exceptions. For example, for purposes of rejecting uninsured motorist coverage, an independent agent is considered the agent for the insurance company rather than the insured's broker when the insurance company is one of the agent's licensed companies. See Travelers Ins. Co. v. Quirk, 583 So.2d 1026 (Fla.1991).