525 So.2d 870 (1988)
Alton MOORE, Appellant,
v.
STATE of Florida, Appellee.
No. 69496.
Supreme Court of Florida.
May 26, 1988.
*871 May L. Cain, Sp. Asst. Public Defender, North Miami, for appellant.
Robert A. Butterworth, Atty. Gen. and Ralph Barreira, Asst. Atty. Gen., Miami, for appellee.
PER CURIAM.
Alton Moore appeals his convictions for first-degree murder and armed burglary. The trial judge imposed the death sentence on the murder conviction in accordance with the jury's recommendation. He also imposed a life sentence for armed burglary and a five-year sentence for possessing a weapon while engaged in a felony. We have jurisdiction. Art. V, § 3(b)(1), Fla. Const. The appellant's primary defense was mental competency at the time of the offense. We find we must reverse both the convictions and the death sentence and remand for a new trial because the trial judge failed to excuse a challenged juror for cause who said his belief about the insanity defense would probably prevent him from following the court's instructions on that issue.
This was a particularly gruesome crime. Paramedics found the victim in her home, bleeding profusely from an ear-to-ear severe knife cut. The appellant, who sometimes worked as a handyman and gardener on the victim's premises, was identified by the victim before she died. Other testimony established the appellant's presence near the victim's home at the time she died, and shortly after the incident appellant confessed to the crime. Appellant's defense theory throughout the trial was that his paranoid schizophrenic condition rendered the confession unreliable and that he was insane at the time of the offense. Counsel for the state and for the defense questioned the jury extensively concerning the insanity defense and the jurors' ability to accept or reject expert opinions from mental health professionals. The following exchange occurred during the voir dire examination of a prospective juror, Mr. Lopez:
MR. BAND [STATE ATTORNEY]: Does anybody here have any particular feelings about the defense you have all heard about on TV? In certain cases, there's been some notoriety in the use of insanity defense. Does anybody have any feelings that it is not a viable defense? It's not a real defense?
MR. LOPEZ: I think it's overused.
... .
MR. LOPEZ: I think we are interested in the frame of mind of the person at the time of the incident, when it took place. When was he evaluated, three weeks later?
THE COURT: That is something to be determined later on. That goes to the weight of the evidence, once it's been submitted to you... .
MR. SMITH [DEFENSE ATTORNEY]: You responded you thought the defense issue of insanity is overused. Do you have a view about insanity or about psychiatrists or all of this we're talking about that would prevent you from being fair to somebody that asserts a defense of that type? Do you think you would be unfair to somebody?
MR. LOPEZ: I feel that anybody that takes another person's life is a bit insane, premeditated, takes a person's life. I don't see how you could let somebody off because of that factor.
MR. SMITH: You don't think somebody could be legally insane?
MR. LOPEZ: I  I believe he can be. I don't believe he should be let go because he is.
THE COURT: What do you mean by the phrase let go?

*872 MR. LOPEZ: Set free.
MR. SMITH: Let me just ask you this, Mr. Lopez, if the judge were to further instruct you, and I believe he will in this case, if you were selected as a juror, if your verdict in this case is that the defendant is not guilty because legally insane, that does not mean he will be released from custody. The judge can conduct an additional proceeding to determine if he should be committed to a mental hospital, kept in jail or given treatment. If the judge were to tell you that, would that satisfy you and would you be able to listen to the instructions?
MR. LOPEZ: If he gets committed to a hospital when deemed insane, where does he go, go to jail or set free?
MR. SMITH: Unfortunately, that is not for your consideration in this case. Your consideration is whether or not someone is guilty or not guilty in accordance to the instruction the judges gives. Will that interfere with your decision making?
MR. LOPEZ: No.
MR. SMITH: You're not going to be thinking about, well, this guy is going to be getting out sometime in the future?
MR. LOPEZ: Yes, I will.
MR. SMITH: That may prevent you from following these instructions about insanity?
MR. LOPEZ: Probably it would, yes.
Appellant's trial counsel challenged Lopez for cause based on his stated inability to follow the court's instructions. The trial court denied the challenge, although it granted a defense motion to excuse another juror for cause based on almost identical answers. The appellant expended a peremptory challenge to remove Mr. Lopez from the jury panel. Later, appellant exhausted his peremptory challenges and made a request for additional peremptory challenges which was denied by the trial judge.
The record clearly reflects that the sole issue presented to the jury in the guilt phase of appellant's trial concerned appellant's mental illness. This is illustrated by the prosecutor's closing argument, where he stated: "We agree that the defendant has some form of mental illness, but is he insane? That is the $64,000 question. Was he insane on ... the 29th of August, 1985? That is the question. That is the sole question."
The jury found the defendant guilty as charged and recommended imposition of the death penalty, which the trial judge imposed. The appellant claims ten separate errors occurred in this trial. We will address only the trial judge's refusal to excuse the prospective juror Lopez for cause, because it is dispositive of this case. We will also address the claim that appellant's confession should have been suppressed in order to facilitate a retrial of this matter.
With regard to the juror discharge claim, this Court, almost thirty years ago, in Singer v. State, 109 So.2d 7 (Fla. 1959), emphasized the importance of an impartial jury and set forth the test for excusing a juror for cause:
[I]f there is a basis for any reasonable doubt as to any juror's possessing that state of mind which will enable him to render an impartial verdict based solely on the evidence submitted and the law announced at the trial, he should be excused on motion of a party, or by the court on its own motion.
Id. at 23-24. We reaffirmed that rule in Hill v. State, 477 So.2d 553 (Fla. 1985), where we addressed the trial court's failure to excuse for cause an allegedly biased juror in a death case. These holdings are consistent with United States Supreme Court decisions on this issue. See, e.g., Murphy v. Florida, 421 U.S. 794, 95 S.Ct. 2031, 44 L.Ed.2d 589 (1975).
In the instant case, the sole theory of appellant's defense was mental competency. The challenged juror's comments on the insanity defense, as reflected in the record, clearly raise a reasonable doubt whether Lopez could follow the court's instructions on the insanity issue and render an unbiased verdict. We conclude, under these circumstances, that the trial judge committed error by refusing to excuse the challenged juror. Cf. Hill v. State; Henninger v. State, 251 So.2d 862 (Fla. 1971) (juror properly excused for cause based on *873 inability to give fair consideration to insanity defense in first-degree murder trial); Auriemme v. State, 501 So.2d 41 (Fla. 5th DCA 1986) (juror's ability to be fair and impartial must be unequivocally asserted in the record). The trial court's failure to excuse the juror for cause reduced the number of peremptory challenges available to the appellant and, as we held in Hill:
[I]t is reversible error for a court to force a party to use peremptory challenges on persons who should have been excused for cause, provided the party subsequently exhausts all of his or her peremptory challenges, and an additional challenge is sought and denied.
477 So.2d at 556 (citations omitted.) The record reflects that the appellant exhausted all his challenges and a request for additional challenges was denied. We have no choice but to reverse and grant the appellant a new trial.
To facilitate the new trial, we also address appellant's claim that his confession was involuntary and should have been suppressed. Appellant claims that the investigating detective played upon his personality and tricked him into giving the confession. To the contrary, we find no abusive treatment or improper conduct by the investigating detective. The officer's statement to the appellant that, based on the evidence, the officer knew the defendant committed the murder is not such conduct that would render a confession involuntary. The appellant was promised nothing and expressly acknowledged in his statement that he had been well treated. We find the confession was freely and voluntarily made and properly admitted in this case.
Accordingly, we vacate the judgment and sentence and remand for a new trial.
It is so ordered.
McDONALD, C.J., and OVERTON, EHRLICH, SHAW, BARKETT, GRIMES and KOGAN, JJ., concur.