576 So.2d 691 (1990)
Melvin TROTTER, Appellant,
v.
STATE of Florida, Appellee.
No. 70714.
Supreme Court of Florida.
December 20, 1990.
Rehearing Denied April 4, 1991.
*692 James Marion Moorman, Public Defender and Douglas S. Connor, Asst. Public Defender, Tenth Judicial Circuit, Bartow, for appellant.
Robert A. Butterworth, Atty. Gen. and David R. Gemmer, Asst. Atty. Gen., Tampa, for appellee.
SHAW, Chief Justice.
Melvin Trotter appeals his conviction for first-degree murder and sentence of death, imposed in accordance with the jury's recommendation.[1] We affirm the conviction, reverse the sentence, and remand for resentencing.
On June 16, 1986, a truck driver went into Langford's grocery in Palmetto, Florida, and found the seventy-year-old owner, Virgie Langford, bleeding on the floor in the back of the store. She had suffered a large abdominal wound which resulted in disembowelment; there were a total of seven stab wounds. She told the driver that she had been stabbed and robbed. Several hours after the surgery for her wounds, the victim went into cardiac arrest and died.
The jury found Trotter guilty of robbery with a deadly weapon and first-degree murder, and recommended the death penalty by a nine-to-three vote. The trial court found four aggravating circumstances[2] and four mitigating circumstances.[3] Finding the aggravating circumstances outweighing the mitigating circumstances, the court sentenced Trotter to death.
Trotter raises eight points on appeal. He first contends that the trial court erred in refusing to excuse four prospective jurors for cause, thus forcing the defense to expend peremptory challenges in removing them. He argues that because he eventually exhausted his peremptory challenges and was denied an additional one, reversal is required under state and federal law. We disagree. Under federal law, the defendant must show that a biased juror was seated.[4]Ross v. Oklahoma, 487 U.S. 81, *693 108 S.Ct. 2273, 101 L.Ed.2d 80 (1988). Trotter has made no such claim.
Under Florida law, "[t]o show reversible error, a defendant must show that all peremptories had been exhausted and that an objectionable juror had to be accepted." Pentecost v. State, 545 So.2d 861, 863 n. 1 (Fla. 1989). By this we mean the following. Where a defendant seeks reversal based on a claim that he was wrongfully forced to exhaust his peremptory challenges, he initially must identify a specific juror whom he otherwise would have struck peremptorily.[5] This juror must be an individual who actually sat on the jury and whom the defendant either challenged for cause or attempted to challenge peremptorily or otherwise objected to after his peremptory challenges had been exhausted.[6] The defendant cannot stand by silently while an objectionable juror is seated and then, if the verdict is adverse, obtain a new trial. In the present case, after exhausting his peremptory challenges, Trotter failed to object to any venireperson who ultimately was seated.[7] He thus has failed to establish this claim.
The next point raised by appellant is the trial court's failure to investigate alleged extraneous influences upon the jury. After sentencing, affidavits were presented in which it was asserted that the jury deliberated in a room which had law books and a telephone. Juror Morris testified that three people used the phone before deliberation began, but only to inform their families that they would be coming home late. Morris testified that at no time were law books used. In the instant case, the jury's deliberation in a less than ideal environment (in a judge's hearing room) was occasioned by the fact that available jury rooms could not accommodate twelve jurors comfortably. Russ v. State, 95 So.2d 594 (Fla. 1957), is inapplicable because there the jury was improperly influenced  a juror stated, in the presence of the other jurors, that he could never accept a recommendation of mercy because he had personal knowledge that the defendant had severely beaten and threatened to kill the victim on numerous occasions and described beatings and threats in great detail. Similarly, reliance on Johnson v. State, 27 Fla. 245, 9 So. 208 (1891), is misplaced. In Johnson the jurors received their instructions from their own perusal of law books, rather than exclusively from the trial judge. In the absence of evidence that the jury was improperly influenced, we find no error in the court's denial of appellant's motion for a new trial.
Appellant raises as error the court's refusal to disqualify the prosecutor who seven years earlier had represented appellant on an unrelated matter.[8] While we think it would have been better if the prosecutor had not participated in this case, see Havens v. Indiana, 793 F.2d 143 (7th Cir.), cert. denied, 479 U.S. 935, 107 S.Ct. 411, 93 L.Ed.2d 363 (1986), on the facts we see no error. The prosecutor stated that he had no recollection of appellant and the trial court found that no special knowledge or information was obtained in the prior representation that could be useful in the present prosecution. State v. Fitzpatrick, 464 So.2d 1185 (Fla. 1985), is distinguishable from the instant case in that it involved a *694 state attorney who, as a result of prior representation, had knowledge relating to the current charge.
The fourth point appellant raises as error is the removal of juror Burse for cause. The standard for review of this alleged error is set forth in Wainwright v. Witt, 469 U.S. 412, 105 S.Ct. 844, 83 L.Ed.2d 841 (1985). It is the duty of a party seeking exclusion to demonstrate, through questioning, that a potential juror lacks impartiality. The trial judge must then determine whether the juror's views would prevent or substantially impair the performance of his duties as a juror in accordance with his instructions and his oath. On appeal the question is not whether a reviewing court might disagree with the trial court's findings, but whether those findings are fairly supported by the record. We believe that the trial court's finding that Burse's views would have substantially impaired his performance as a juror is adequately supported by the record. While being examined relative to his fitness to serve as a juror, Burse answered, "I don't know" or otherwise equivocated ten times in response to questions concerning his views of the case and the death penalty. The fact that he ultimately responded affirmatively to a question regarding his ability to follow the law as instructed does not eliminate the necessity to consider the record as a whole. When the entire Burse colloquy is considered, we conclude that the trial judge did not abuse his discretion in removing Burse for cause.
As his fifth point, appellant asserts that it was error to consider his violation of community control as an aggravating factor in sentencing.[9] We agree. Subsection 948.10(1), Florida Statutes (1985), provides that community control is "an alternative, community-based method to punish an offender in lieu of incarceration." Moreover, we have held that violation of probation is not an aggravating circumstance  probation is not equivalent to being under sentence of imprisonment, for the appellant was not incarcerated. Bolender v. State, 422 So.2d 833 (Fla. 1982), cert. denied, 461 U.S. 939, 103 S.Ct. 2111, 77 L.Ed.2d 315 (1983); Ferguson v. State, 417 So.2d 631 (Fla. 1982); Peek v. State, 395 So.2d 492 (Fla. 1980), cert. denied, 451 U.S. 964, 101 S.Ct. 2036, 68 L.Ed.2d 342 (1981). Penal statutes must be strictly construed in favor of the one against whom a penalty is to be imposed. Reino v. State, 352 So.2d 853 (Fla. 1977), receded from on other grounds, Perez v. State, 545 So.2d 1357 (Fla. 1989). Because the trial judge erroneously treated violation of community control as an aggravating factor in sentencing, and because there were four aggravating and four mitigating circumstances, we remand to a jury for resentencing.
We do not agree with appellant's sixth assertion of error, that reversal is required because the trial court refused to admit appellant's drawings into evidence in mitigation. If any error occurred here, it was cured when the judge permitted the artwork to go to the jury during deliberation. Moreover, the trial judge had the opportunity to view the artwork at every stage of the proceedings, and to hear argument before he announced his decision.
Appellant's argument, that the instruction regarding the aggravating circumstance as heinous, atrocious, or cruel is vague, is without merit. Smalley v. State, 546 So.2d 720 (Fla. 1989).
Finally, we agree with the trial court that the murder here was heinous, atrocious, or cruel. The testimony indicated that the seventy-year-old victim was stabbed at least seven times, one wound resulting in disembowelment. These facts support this aggravating factor. Holsworth v. State, 522 So.2d 348 (Fla. 1988); Nibert v. State, 508 So.2d 1 (Fla. 1987); Lusk v. State, 446 So.2d 1038 (Fla.), cert. *695 denied, 469 U.S. 873, 105 S.Ct. 229, 83 L.Ed.2d 158 (1984).
Accordingly, the conviction is affirmed and the case is remanded for resentencing consistent with this opinion.
It is so ordered.
OVERTON, EHRLICH, BARKETT and KOGAN, JJ., concur.
McDONALD, J., concurs in part and dissents in part with an opinion, in which GRIMES, J., concurs.
McDONALD, Justice, concurring in part, dissenting in part.
I concur with the majority opinion on the guilt issues. I dissent on parts of the penalty issues, however, and would affirm the sentence.
I believe it entirely appropriate for the trial judge to find as an aggravating factor that Trotter was under sentence of imprisonment[10] when he committed this crime. Trotter had previously been convicted and sentenced for burglary and robbery. His sentence was community control which he was serving when he committed this homicide.
Community control and probation are defined in section 948.001, Florida Statutes (1985):
(1) "Community control" means a form of intensive, supervised custody in the community, including surveillance on weekends and holidays, administered by officers with restricted caseloads. Community control is an individualized program in which the freedom of an offender is restricted within the community, home, or noninstitutional residential placement and specific sanctions are imposed and enforced.
(2) "Probation" means a form of community supervision requiring specified contacts with parole and probation officers and other terms and conditions as provided in s. 948.03.
The legislature created community control in chapter 83-131, Laws of Florida, the Correctional Reform Act of 1983. In its findings of fact the legislature stated: "The increased use of noncustodial alternatives and nonprison custodial alternatives can alleviate prison overcrowding while still providing a sufficient measure of public safety and assuring an element of punishment." Id. § 2(4) (emphasis added). Probation is the noncustodial alternative, while community control is the nonprison custodial alternative. § 948.001. A person under community control is in supervised custody; one on probation is not. Community control is a harsher sentence than probation.
Subsection 921.141(5)(a), Florida Statutes (1985), provides that being under sentence of imprisonment is an aggravating factor. In this case the state sought to put into evidence the conditions of Trotter's community control to show that he was in fact incarcerated for the purpose of subsection 921.141(5)(a). Defense counsel objected. When the state's purpose was explained, defense counsel responded: "I think you've already proved that."[11]
In State v. Mestas, 507 So.2d 587 (Fla. 1987), we held that a trial judge must articulate reasons for departure before imposing a sentence of community control when the guidelines call for a nonprison sentence. We sustained the contention that community control is something greater than probation or a nonprison sentence. In Sanders v. State, 516 So.2d 38 (Fla. 1st DCA 1987), review dismissed, 520 So.2d 586 (Fla. 1988), the First District Court of Appeal, recognizing Mestas, found that community control cannot serve as a substitute for probation and thereby extend a sentence beyond the guidelines range, as can probation, without departure reasons *696 being given. In State v. VanKooten, 522 So.2d 830 (Fla. 1988), we found that a combined sentence of community control and incarceration represents a sentencing guidelines departure. This would not be true if community control were not the same as imprisonment. In guidelines sentences the first cell allows community control or a specified term of years. "Or" is disjunctive, not conjunctive, and from this one must conclude that community control is the functional equivalent of imprisonment. The difference between the two is where the custody takes place.
The cases cited by the majority which hold that probation is not incarceration are not applicable to one who is sentenced to community control. I am satisfied that one sentenced to community control is under sentence of imprisonment within the definition of subsection 921.141(5)(a). The trial court correctly found this to be a statutory aggravating factor.
I find no error in the judge's sentencing Trotter to death and would affirm it.
GRIMES, J., concurs.
NOTES
[1] Our jurisdiction is mandatory. Art. V, § 3(b)(1), Fla. Const.
[2] The crime was committed while under sentence of imprisonment; the defendant had previously been convicted of a felony involving use or threat of violence; the crime was committed while engaged in the commission of a robbery; and the crime was especially wicked, evil, atrocious, and cruel.
[3] Defendant was under the influence of extreme mental and emotional disturbance; the capacity of the defendant was substantially impaired; the defendant has a below average I.Q. and a history of family and developmental problems; and remorse.
[4] Alternatively, the defendant can show that state law governing peremptory challenges was not followed. Ross v. Oklahoma, 487 U.S. 81, 108 S.Ct. 2273, 101 L.Ed.2d 80 (1988).
[5] See Hamilton v. State, 547 So.2d 630 (Fla. 1989) (reversible error where request for additional peremptory challenge to backstrike specific juror denied); Rollins v. State, 148 So.2d 274 (Fla. 1963) (no reversible error where peremptories exhausted and remaining juror to be selected was not challenged for cause).
[6] In Moore v. State, 525 So.2d 870 (Fla. 1988), and Hill v. State, 477 So.2d 553 (Fla. 1985), this Court held that reversible error was committed when a challenge for cause was improperly denied, the defendant exhausted his peremptory challenges in removing the challenged juror, and the judge denied his motion for additional peremptory challenges. Neither of these opinions discussed the issue of whether it was necessary to object to a particular juror remaining on the panel in order to preserve the question of whether the judge erred in denying the earlier challenge for cause.
[7] Trotter's request for an additional peremptory challenge was not made in connection with a particular venireperson; it was a general request for a challenge that could be exercised in the future.
[8] The matter was a technical violation of probation, which was resolved without a contested hearing.
[9] Subsection 921.141(5), Florida Statutes (1985), provides in pertinent part:

(5) AGGRAVATING CIRCUMSTANCES.  Aggravating circumstances shall be limited to the following:
(a) The capital felony was committed by a person under sentence of imprisonment.
[10] The majority opinion's statement that the trial judge used the fact of violation of community control as an aggravating circumstance is inaccurate. The trial judge found that an aggravating factor existed because Trotter was under sentence of imprisonment when he committed the crime. § 921.141(5)(a), Fla. Stat. (1985).
[11] At the charge conference defense counsel did not object to including the section on being under sentence of imprisonment in the instructions to the jury.