592 So.2d 369 (1992)
Charles H. STREET, Appellant,
v.
STATE of Florida, Appellee.
No. 91-0416.
District Court of Appeal of Florida, Fourth District.
January 22, 1992.
Richard L. Jorandby, Public Defender, Ellen Morris and Tanja Ostapoff, Asst. Public Defenders, West Palm Beach, for appellant.
Robert A. Butterworth, Atty. Gen., Tallahassee, and Ivy Ginsberg Shannock, Asst. Atty. Gen., Miami, for appellee.

ON CLARIFICATION OF FACT
PER CURIAM.
We hereby vacate our original opinion published on December 4, 1991, and substitute the following.
Charles Street appeals his conviction of possession of a handgun by a convicted felon and the habitual offender sentence handed down after a jury verdict of guilty.
*370 Appellant raises several issues on appeal. Only one merits our consideration, and the resolution of that issue requires that we reverse. Appellant claims that his right to a fair trial was abrogated when he had to exhaust his peremptory challenges to excuse a juror whom the trial court refused to allow him to strike for cause; the court then refused his request for additional peremptories (each side had six), though he expressed a desire to strike a certain panel member. Appellee counters that this issue was not preserved for review, and even if it was, that appellant's claim fails on the merits.
Trotter v. State, 576 So.2d 691 (Fla. 1990), is the dispositive case on the question of whether the defendant has preserved this issue for review.
Under federal law, the defendant must show that a biased juror was seated... .
Under Florida law, "[t]o show reversible error, a defendant must show that all peremptories had been exhausted and that an objectionable juror had to be accepted." Pentecost v. State, 545 So.2d 861, 863 n. 1 (Fla. 1989). By this we mean the following. Where a defendant seeks reversal based on a claim that he was wrongfully forced to exhaust his peremptory challenges, he initially must identify a specific juror whom he otherwise would have struck peremptorily. This juror must be an individual who actually sat on the jury and whom the defendant either challenged for cause or attempted to challenge peremptorily or otherwise objected to after his peremptory challenges had been exhausted. The defendant cannot stand by silently when an objectionable juror is seated and then, if the verdict is adverse, obtain a new trial.
Id. at 692-93 (citation omitted) (footnotes omitted). See also Floyd v. State, 569 So.2d 1225, 1230 (Fla. 1990) (must exhaust challenges, request additional challenges, have request denied, and show seated juror unacceptable), cert. denied, ___ U.S. ___, 111 S.Ct. 2912, 115 L.Ed.2d 1075 (1991).
During jury selection, defense counsel exercised the fourth of his six peremptory challenges to excuse venireperson Leahy after the court denied his renewed cause challenge to Leahy. Defense counsel then peremptorily struck two more potential jurors. The court then announced that venireperson Owen would become a member of the panel. Defense counsel asked for another peremptory so that he could strike Ms. Owen. Counsel gave the following reason for his request:
Judge, I would request additional peremptory challenges so I can use one in regard to Miss Owen, I would like to be able to get Miss Sewell on this jury so that at least two of the members of the panel are of the same racial background of the Defendant.
It was a specific request of Mr. Street that I forego any type of fear that I might have in regard to Miss Sewell's impartiality and I would have to say that I probably don't have any fear in regard to that but I would like to get her on this particular panel and I would like to have an additional peremptory challenge.
... .
One of my reasons is if you had accepted my challenge for cause on Mr. Leahy I would have had an additional peremptory challenge to get to Miss Sewell.
(Emphasis added). Owen in fact did serve.
Appellee suggests that appellant waived this issue under Trotter because "he did not identify a juror whom he otherwise would have struck peremptorily who was actually sitting on the jury. Instead he stated that he wanted an additional peremptory challenge so that he could empanel another juror of the same race as the defendant." We do not agree. First, defense counsel did identify another juror whom he would have struck peremptorily and who did serve on the panel: Owen.
As for appellee's second contention, it is true that a defendant has no right to have any particular person serve as a juror but is entitled only to qualified jurors. E.g., Piccott v. State, 116 So.2d 626 (Fla. 1959), appeal dismissed, cert. denied, 364 U.S. 293, 81 S.Ct. 106, 5 L.Ed.2d 83 (1960). However, the precise nature of a peremptory challenge is that it is made at the discretion *371 of the one exercising it, without the need to assign a reason. See Black's Law Dictionary 1023 (5th ed. 1979). Therefore, it makes no difference that the reason he did offer was not legally valid. Thus the defendant made a sufficient showing under Trotter to preserve this issue for review.
"[I]t is error for a court to force a party to exhaust his peremptory challenges on persons who should be excused for cause since it has the effect of abridging the right to exercise peremptory challenges." Leon v. State, 396 So.2d 203, 205 (Fla. 3d DCA) (citing Swain v. Alabama, 380 U.S. 202, 85 S.Ct. 824, 13 L.Ed.2d 759 (1965)), rev. denied, 407 So.2d 1106 (Fla. 1981). See also Stroud v. United States, 251 U.S. 15, 40 S.Ct. 50, 64 L.Ed. 103 (1919).
"The test for determining juror competency is whether the juror can lay aside any bias or prejudice and render his verdict solely upon the evidence presented and the instructions on the law given to him by the court." Lusk v. State, 446 So.2d 1038, 1041 (Fla.), cert. denied, 469 U.S. 873, 105 S.Ct. 229, 83 L.Ed.2d 158 (1984). Deciding whether a prospective juror meets the Lusk test is within a trial court's discretion, Pentecost v. State, 545 So.2d 861 (Fla. 1989), based upon what the court hears and observes.
Hitchcock v. State, 578 So.2d 685, 688 (Fla. 1990), cert. denied, ___ U.S. ___, 112 S.Ct. 311, 116 L.Ed.2d 254 (1991). In the instant case, the trial court found that Leahy, the juror whom appellant argues should have been excused for cause, "left the Court with the unequivocal impression that he would be fair, that he would set [his possible bias] aside and he would not have any difficulty."
The interview with Leahy was lengthy, and we briefly summarize the flow of dialogue regarding Leahy's potential biases or prejudices: 1) Leahy is or was a law enforcement officer; 2) he drove past the murder scene on that morning (as he still does) and saw what he recognized might be a police killing crime scene; 3) he was aware that there was a conviction for the murders; 4) he was affected by the killings but not traumatized and had feelings about the crime but not the author of it; 5) Leahy responded to defense counsel's question of whether he could be fair and impartial as a juror in the Dade County murder case by stating he doesn't know what he would have done; 6) if he knew the defendant had been convicted of one crime, it "would make it more credible to believe that he is capable of committing crimes"; however, 7) he did not know whether this would keep him from being impartial, and he said he would like to think that appellant's having committed a prior crime would not put him in a different frame of mind than if appellant had committed no other crimes.
We note that Leahy said: 1) he "would try to ignore anything that had gone on before and judge strictly on the facts presented in court"; 2) he thought he actually could do this; 3) appellant's having committed another crime "makes it more difficult to be completely unbiased, but I would certainly try. I would try to make my judgment based upon what I heard here, not what had gone on before"; and 4) "there is a possibility that he might not be as fair and impartial as in another case." The prosecutor, leading, asked Leahy whether regardless of what he had been told, he would be able to follow the judge's instructions on the law and apply them to the facts presented in court. Leahy responded, "I am sure that I could." He also said that if there was evidence of the Dade County murders, he did not think he would be unable to render a fair trial. Although he recognized that he would have to overcome bias, he stated that he "would set that aside"; and at that moment there was no question that he would be able to do so.
Our analysis begins with the case of Ortiz v. State, 543 So.2d 377 (Fla. 3d DCA 1989), in which a potential juror had worked with the prosecuting attorneys and the potential juror's husband was employed by the fire department that had investigated the arson with which appellant was charged. Upon questioning about whether she would be able to render a verdict solely on the evidence, the potential juror said, "I believe so." The third district found her answers were sufficiently equivocal to require *372 reversal. The court also held it was error to refuse to excuse a juror who had already decided defendant was guilty but said she could "try" to be fair. Id. at 379. Cf. Garcia v. State, 570 So.2d 1082 (Fla. 3d DCA 1990) (despite her answers to leading questions, potential juror had shown strong bias).
The present case is not as clear as Hamilton v. State, 547 So.2d 630 (Fla. 1989), and Leon v. State, 396 So.2d 203 (Fla. 3d DCA), rev. denied, 407 So.2d 1106 (Fla. 1981). In Hamilton, even though the venireperson stated that she could be fair and impartial, her other responses were sufficiently equivocal to cast doubt on this; for example, she had expressed that it was defendant's burden to prove that he was not guilty, thus indicating she had a preconceived notion of his guilt. In the instant case, Leahy did not seem to have a preconceived idea that appellant was guilty but only expressed that he might be biased if he knew appellant had committed another crime.
In Leon, the venireperson had been the victim of burglary, the crime with which Leon was charged. She repeatedly stated that she did not know whether she could be objective or fair. In contrast, Leahy did state that he thought he could set his biases aside.
Neither are the responses in this case as much cause for concern as those in Moore v. State, 525 So.2d 870 (Fla. 1988), where the venireperson stated that his concern for the defendant's punishment "probably would" prevent him from following the judge's instructions on Moore's insanity defense. Leahy made no such representation here, and in fact, occasionally said the opposite.
Nevertheless, in light of Ortiz, we conclude that Leahy's responses were sufficiently equivocal to raise a concern that reasonable people could differ as to whether Leahy would have been able to lay aside any biases or prejudices and render a verdict solely on the evidence.
This issue does not appear to be appropriate for harmless error analysis. "The denial or impairment of the right [to peremptory challenges] is reversible error without a showing of prejudice... ." Swain v. Alabama, 380 U.S. 202, 219, 85 S.Ct. 824, 835, 13 L.Ed.2d 759, 772 (1965). See Imbimbo v. State, 555 So.2d 954, 955 (Fla. 4th DCA 1990) (if denial of challenge for cause results in exhaustion of peremptories to excuse challenged juror, error not harmless and appellate court will reverse). But see Hitchcock v. State, 578 So.2d 685, 689 (Fla. 1990) (supreme court applied harmless error analysis to determination of juror competency issue where defendant had to exercise peremptory challenges to remove jurors as to whom cause challenge was denied but could not show any remaining juror on panel he would have stricken), cert. denied, ___ U.S. ___, 112 S.Ct. 311, 116 L.Ed.2d 254 (1991).
We therefore reverse and remand for a new trial.
REVERSED AND REMANDED.
HERSEY, GUNTHER and FARMER, JJ., concur.