728 So.2d 354 (1999)
Charles STRAW, Appellant,
v.
ASSOCIATED DOCTORS HEALTH AND LIFE, etc., et al., Appellees.
Donnie Neely, Appellant,
v.
Charles Straw, Appellee.
Nos. 98-1688, 98-1735.
District Court of Appeal of Florida, Fifth District.
March 19, 1999.
Clifford A. Taylor, Bunnell, for Charles Straw.
Jamie Billotte Moses and David A. Corso of Fisher, Rushmer, Werrenrath, Wack & Dickson, P.A., Orlando for Donnie Neely.
John J. Schickel, Jacksonville, for Associated Doctors Health and Life.
LESTER, K.R., Jr., Associate Judge.
The cause below arose from Straw's two-count complaint against Neely and Associated Doctors for intentional misrepresentation and fraud in connection with Straw's purchase of an insurance policy. The complaint alleged that in October 1991, Neely, acting as Associated's insurance agent, made certain intentional misrepresentations of fact, causing Straw to act in reliance and cancel his existing health care coverage. Straw was injured before Associated's policy took effect and was forced to shoulder the resulting medical expenses.
At trial, the court denied defendants' challenge for cause of two jurors who had expressed some distaste for insurance companies, forcing the defendants to use two of their three available peremptory challenges to strike the jurors. Throughout the trial, Straw introduced evidence of the relationship between Neely and Associated, seeking to *355 establish Associated's vicarious liability for Neely's actions. At the close of trial, however, the court concluded that Neely had acted as an independent broker and refused to instruct the jury on the agency issue. The jury returned a verdict against Neely only and awarded Straw damages totaling $129,600.29.
In separate appeals, Neely sought review of the denied challenge for cause and Straw appealed the court's refusal to instruct the jury on agency. The appeals have been consolidated and in this opinion we reverse on both points.

POINT ONEJURY SELECTION
Each side was given three peremptory challenges during the jury selection phase. During voir dire, the following exchanges took place between juror Poole and the parties' counsel:[1]
Mr. Taylor: Have any of you ever had any problems with health insurance coverage?
Juror Poole: Yes, I have, several years ago ... They were slow in paying and they give you a hard time. You get the runaround from them. They keep denying the form. You fill out the form and they would deny it and say they wouldn't have to pay it.
* * * * * * *
Mr. Taylor: Have you ever been involved in a lawsuit?
Juror Poole: Yes.
Mr. Taylor: What type of lawsuit?
Juror Poole: It was a boating accident and we were sued by the individual involved with it.
* * * * *
Mr. Taylor: Is there anything about that experience that being in the judicial system that you bring with you today that you have maybe some ill feelings about?
Juror Poole: Well, it was having to deal with the insurance company again in the lawsuit.... We were insured and the other fellow was not insured and I don'tI don't believe we should have settled, you know. I thought we were in the right but they went ahead and settled out of court anyway.
* * * * *
Mr. Corso: Mr. Poole, you have expressed to us your experiences with insurance companies and I got the feeling that you have a strong opinion about insurance companies.
Juror Poole: I do. It is negative.
Mr. Corso: Okay, I suppose you have held that opinion for quite a while?
Juror Poole: Yes.
Mr. Corso: Do you think there is anything that could be said to you that will make you change from that opinion?
Juror Poole: No. It is subconscious. It is there.... If they came down it would be real close. It would be negative, you know.
Following these exchanges, the court sought to rehabilitate juror Poole and ensure that he could reach a fair and impartial decision based on the law and the evidence. Thereafter, the defendants challenged for cause Jurors Poole and Adkins, arguing that they had manifested personal bias against insurance companies. The court overruled on both challenges and the defendants used their peremptory challenges to strike Poole, Adkins, and a third juror. They then requested an additional peremptory to strike Juror Malm, which the court denied. Malm sat on the jury and the trial continued. Neely argues on appeal that the court's refusal to strike Jurors Poole and Adkins for cause, or grant an additional peremptory to strike Malm, was error.[2] We agree and reverse.
*356 Florida trial judges have very broad discretion in ruling on challenges for cause. As stated by the supreme court:
There is hardly any area of the law in which the trial judge is given more discretion than in ruling on challenges of jurors for cause. Appellate courts consistently recognize that the trial judge who is present during voir dire is in a far superior position to properly evaluate the responses to the questions propounded to the jurors.
Cook v. State, 542 So.2d 964, 969 (Fla.1989) (no error for the trial court to refuse to excuse for cause two jurors who expressed some difficulty in understanding English). Further, "[a] general abstract bias about a particular class of litigation will not, in itself, disqualify a juror where it appears that the bias can be set aside." Fazzolari v. West Palm Beach, 608 So.2d 927, 928 (Fla. 4th DCA 1992) (ruling that jurors who had negative feelings about personal injury lawsuits were not required to be excused for cause where they could set aside such feelings); see also Waddell v. State, 458 So.2d 1140 (Fla. 5th DCA 1984) (ruling that jurors were not subject to dismissal merely for stating that they would expect an innocent defendant to take the stand in his own defense).
However, courts should favor dismissing jurors whose bias or prejudice cannot be set aside. Goldenberg v. Regional Import and Export Trucking Co., 674 So.2d 761 (Fla. 4th DCA 1996); Club West, Inc., v. Tropigas of Florida, Inc., 514 So.2d 426 (Fla. 3d DCA 1987). Moreover, "[c]lose calls involving challenges to the impartiality of potential jurors should be resolved in favor of excusing the juror rather than leaving doubt as to impartiality." Goldenberg, 674 So.2d at 764. Our review of the trial transcript leads us to conclude that Juror Poole expressed sufficient bias to warrant his removal for cause from the panel and that the court erred in denying Neely's challenge for cause.
The record shows that plaintiffs counsel asked the potential jurors early on whether they would "be able to follow what the Judge tells you" and Poole did not raise his hand or otherwise dissent. However, Poole later indicated that he personally had problems with health and liability coverage on two separate occasions. Further, he unequivocally stated that he had strong negative feelings towards insurance companies, and that nothing could be said to change that opinion because "[I]t is subconscious. It is there." He went on to freely volunteer that "[I]f they came down it would be real close. It would be negative, you know." Thus, Poole clearly manifested bias against insurance companies, and that bias was based on his personal experience.
Further, Poole's later responses to the court's attempt to rehabilitate were equivocal and he may have responded affirmatively simply out of respect for the court.
The Court: Mr. Poole, you had indicated earlier in your statement you could be fair and impartial in this case and try the case based on the evidence even though you have had some personal experience with insurance companies but the question was at the end there then you said no, you couldn't do that but the question is can you evaluate the facts as they come to your attention in this trial 
Juror Poole: Uh-huh 
The Court:and render a decision that is fair to both sides regardless of your previous situation there and just render a fair verdict in this case, that is the question?
Juror Poole: Yes, I believe so.
The Court: Yes, because this is health insurance.
*357 Juror Poole: Right.
Poole's responses came in the middle of the court's questions and he never clearly stated that he could view the facts impartially. We also note that the structure of the court's questions may have caused Poole to respond affirmatively and in an agreeable manner rather than express his true feelings. These exchanges are at least comparable to those which resulted in reversal in Goldenberg, wherein the court held that a juror's statement that she was "a fair person" was insufficient to demonstrate impartiality where she had earlier indicated bias against personal injury plaintiffs. We conclude that Poole manifested a clear bias against insurance companies, that he never stated an ability to set aside the bias, and that the court erred by denying Neely's challenge of Poole. Accordingly, we reverse and remand for a new trial.

POINT TWOAGENCY
In light of a supreme court opinion that was unavailable at the time of trial, we also conclude that the court erred by removing the issue of agency from the jury. Due to the absence of a court reporter, there is no record of the discussions between counsel and the court regarding jury instructions. However, the parties agree that during the discussions, the court ruled that Neely was an independent agent and that Associated could not be held vicariously liable for her actions.[3] Straw argues that this was clear error given the evidence adduced at trial. In relevant part, the evidence indicated that Neely was employed by Associated for three months as a non-captive agent[4] before the meeting with Straw, and that during and immediately after that period:
1. Associated trained Neely for "a couple of days" and provided her with an instruction manual;
2. an Associated officer accompanied Neely on at least one sales call;
3. Neely was required to report to Associated's Daytona Beach office each Monday morning and review policies that had been sold in the prior week;
4. Neely sold Associated's policies whenever appropriate, and more often sold policies from other companies;
5. Neely was paid commissions by Associated;
6. Neely was a licensed insurance agent who prepared Straw's applications for Associated policies on forms provided by Associated; and
7. Neely accepted a check from Straw, payable to Associated, which was later negotiated for value by Associated.
Straw argues that these facts can only lead to the conclusion that Neely was acting as Associated's agent when she made the alleged misrepresentations. However, we need not determine whether the totality of these circumstances created an agency relationship between the two. Rather, we conclude that Associated made Neely its agent by providing her with blank applications and then accepting the business generated therefrom.
The supreme court recently established in Almerico v. RLI Ins. Co., 716 So.2d 774 (Fla.1998) that under section 626.342(2), Florida Statutes (1997):
the furnishing of company materials by the insurance company to the individual agent or broker and the subsequent acceptance of business from that agent establish civil liability by an insurer to an insured in the same manner as if the insurer had specifically designated the broker as its agent. Further ... the principal (insurer) will be bound by the agent's action unless the insured knew or was put on notice of inquiry as to limitations on the agent's actual authority.
Id. at 781; see also Brown v. Inter-Ocean Ins. Co., 438 F.Supp. 951 (N.D.Ga.1977) (interpreting Florida Insurance laws and ruling that an agency relationship may be created where the insurance company provides the alleged agent with application forms and accepts *358 the resulting business). Section 626.342 imposes civil liability and penalties on insurance companies who furnish supplies to their supposed independent brokers. Specifically, it mandates that:
(1) No insurer, general agent, or agent, directly or through any representative, shall furnish to any agent any blank forms, applications, stationery, or other supplies to be used in soliciting, negotiating, or effecting contracts of insurance on its behalf unless such blank forms, applications, stationary, or other supplies relate to a class of business with respect to which the agent is licensed and appointed, whether for that insurer or another insurer.
(2) Any insurer, general agent, or agent who furnishes any of the supplies specified in subsection (1) to any agent or prospective agent not appointed to represent the insurer and who accepts from or writes any insurance business for such agent or agency shall be subject to civil liability to any insured of such insurer to the same extent and in the same manner as if such agent or prospective agent had been appointed or authorized by the insurer or such agent to act in its or his or her behalf....
§ 626.342, Fla. Stat. (1997). We conclude that under the supreme court's interpretation of section 626.342 in Almerico, Neely became Associated's agent for purposes of this action.
The court in Almerico began its analysis by noting that, generally, insurance brokers are agents of the insured rather than the insurer, but that "an insurer may be held accountable for the actions of those whom it cloaks with `apparent agency.'" Almerico, 716 So.2d at 777. The "agent" in Almerico obtained insurance applications from the insurer's authorized distributor, was assigned an "agent number" by the insurer, and was required to sell a minimum number of policies annually to remain within the insurer's network. More importantly, though, he used applications supplied by the insurer to acquire new business which the insurer accepted. The supreme court ruled that this arrangement created an agency, noting that section 626.342(2) is "unambiguous insofar as it makes the insurer liable to the insured in the same way that it would be liable had it expressly appointed the broker as its agent." Id. at 781.
In the case at bar, it is undisputed that Associated provided Neely with training materials as well as blank applications, some of which were ultimately used to solicit Straw. Further, Associated accepted the business generated by this relationship, in particular Mr. Straw's November premium payment. Significantly, Straw made his premium payment with a check payable to "Associated Doctors," which Neely accepted and forwarded to Associated. While we reverse under the authority of Almerico and subsection 626.342(2), we also note that the arrangement may have cloaked Neely with sufficient indicia of agency to create an "apparent agency." Accordingly, we reverse and remand for proceedings consistent with this opinion.
REVERSED AND REMANDED
W. SHARP and GOSHORN, JJ., concur.
NOTES
[1] Taylor served as counsel for Straw and Corso for the defendants.
[2] We note that this issue is properly preserved for appeal. The supreme court in Trotter v. State, 576 So.2d 691 (Fla.1990) imposed the following prerequisites to appeal of a denied challenge for cause:

Where a defendant seeks reversal based on a claim that he was wrongfully forced to exhaust his peremptory challenges, he initially must identify a specific juror whom he otherwise would have struck peremptorily. This juror must be an individual who actually sat on the jury and whom the defendant either challenged for cause or attempted to challenge peremptorily or otherwise objected to after his peremptory challenges had been exhausted.
Id. at 693 (footnotes omitted). Neely unsuccessfully challenged juror Malm for cause after exhausting her peremptory challenges on Poole, Adkins, and a third juror. Her requested additional peremptory was denied and Malm sat on the jury, thereby satisfying the requirements stated in Trotter.
[3] This is supported by the fact that during deliberations, the jury asked whether Associated's alleged false statements included those made by Neely and the court responded "no."
[4] Captive agents sell only a named carrier's policies while non-captive agents may represent and sell policies from several companies.