36 So.3d 730 (2010)
MERCURY INSURANCE COMPANY OF FLORIDA, Appellant,
v.
Philip S. MARKHAM, Appellee.
No. 1D09-2054.
District Court of Appeal of Florida, First District.
April 20, 2010.
Rehearing Denied June 4, 2010.
Elizabeth K. Russo, of Russo Appellate Firm, P.A., Miami, and Butler, Pappas, Weihmuller, Katz, Craig, LLP, Tallahassee, for Appellant.
Louis K. Rosenbloum, of Louis K. Rosenbloum, P.A., Pensacola and T. Bradley McRae, of McRae, McRae & Douglas, Lake City, for Appellee.
WETHERELL, J.
Appellant, Mercury Insurance Company of Florida (Mercury), argues that the trial court erred in refusing to recognize its rescission of an insurance policy based upon a material misrepresentation by the insured on the application for insurance. *731 We agree and, therefore, reverse the final judgment entered in favor of Appellee.
In July 2002, Appellee suffered injuries when his foot and ankle were run over by a Ford F-250 truck owned by Michael Roberts and insured under a policy issued by Mercury. After Appellee's claim was filed, Mercury rescinded the policy, returned Roberts' premium, and refused to defend the claim based upon an alleged material misrepresentation made by Roberts in the insurance application. Appellee subsequently settled with Roberts for $350,000, and as part of the settlement, Roberts assigned his claims against Mercury to Appellee and Appellee agreed to withhold execution against Roberts.
Appellee moved for partial summary judgment against Mercury, arguing that the denial of coverage to Roberts was improperly based upon the ambiguous term "modified" contained in a question on the application for insurance. The trial court granted the motion, finding that the "policy wording is ambiguous" and that insurance coverage existed as a matter of law because the ambiguity in the insurance application must be construed in favor of coverage.[*] The trial court reserved jurisdiction on damages, and after the jury returned a verdict finding that Mercury wrongfully refused to defend the claim and that the settlement between Roberts and Appellee was reasonable in amount and entered into in good faith, the trial court entered a final judgment against Mercury in the amount of $460,408.76. This timely appeal followed.
We review de novo the trial court's determination that the question at issue was ambiguous. GRG Transp., Inc. v. Certain Underwriters at Lloyd's, London, 896 So.2d 922, 925 (Fla. 3d DCA 2005).
The insurance application signed by Roberts asked: "Is any vehicle rebuilt, salvaged, modified, altered, or specifically built/customized?" (emphasis added). The application form expressly directed the broker not to bind coverage if the applicant answered "yes" to this question.
Roberts answered "no" to this question even though he had installed larger, wider tires and a lift-kit on the truck, as can be seen in these pictures in the record:

*732 
Roberts testified that he did not read the application and that he relied on the broker (who, according to Roberts, was aware of the nature and extent of the modifications to the truck) to fill out the form. Roberts testified that his truck had been "altered in many ways" from the original manufacturer's specifications, including the tinting of the windows, installation of a stereo, and installation of the larger, wider tires and lift-kit. However, he also testified that he did not know what the terms "modified" or "altered" meant in the context used on the insurance application and that, to him, "modified" referred to engines and related parts because he previously raced cars and there were modified classes in racing.
Mercury contends that Roberts' negative response to the question was a material misrepresentation, and it presented an affidavit from its adjuster stating that Mercury would not have issued the policy had Roberts answered the question in the affirmative as he should have. Mercury argues that the application question was unambiguous and that the only reasonable interpretation of the word "modified" is that it means any change to the vehicle.
Appellee does not dispute the materiality of the alleged misrepresentation made by Roberts in the application. Rather, Appellee contends that the question was ambiguous when "modified" is read in context of the other types of vehicles listed in the question and the policy's coverage of loss or damage to "custom parts or equipment" and "special equipment or modifications." Appellee also argued below that the broker was Mercury's agent such that her alleged knowledge of the nature and extent of the modifications to Roberts' truck was imputed to Mercury and thus estopped Mercury from denying coverage on the basis of the modifications.
The application form included the statement that the applicant "agrees that [the] policy shall be null and void, and/or result in a claim denial if such information is false, or misleading, or would materially affect acceptance of the risk by [Mercury]." Similarly, section 627.409(1), Florida Statutes (2002), authorized an insurer to deny coverage and rescind an insurance policy based upon a misrepresentation or incorrect statement in an insurance application if:
(a) The misrepresentation . . . or statement is fraudulent or is material either to the acceptance of the risk or to the hazard assumed by the insurer.
[or]
(b) If the true facts had been known to the insurer pursuant to a policy requirement or other requirement, the insurer in good faith would not have issued the policy or contract, would not *733 have issued it at the same premium rate, would not have issued a policy or contract in as large an amount, or would not have provided coverage with respect to the hazard resulting in the loss.
An insurer may not deny coverage under this statute, however, if the alleged misrepresentation was in response to an ambiguous question. See Boca Raton Comty. Hosp., Inc. v. Brucker, 695 So.2d 911, 913 (Fla. 4th DCA 1997); Comprehensive Benefit Adm'rs, Inc. v. Nu-Cape Constr., Inc., 549 So.2d 700 (Fla. 2d DCA 1989). A question is ambiguous when it is susceptible to two reasonable interpretations, one in which a negative response would be correct and one in which an affirmative response would be correct. Comprehensive Benefit, 549 So.2d at 700; see also Great Oaks Cas. Ins. Co. v. State Farm Mut. Auto. Ins. Co., 530 So.2d 1053, 1055 (Fla. 4th DCA 1988). Any such ambiguity must be construed against the insurer and in favor of coverage. See Comprehensive Benefit, 549 So.2d at 700; Gaskins v. Gen. Ins. Co. of Fla., 397 So.2d 729, 731 (Fla. 1st DCA 1981) ("Any ambiguity in the application is to be resolved against the insurer.").
The trial court found the question at issue ambiguous because the term "modified" was susceptible to two reasonable interpretations: 1) that it has something to do with racing and non-street legal type vehicles, as argued by Appellee, and 2) that it encompasses any change to a vehicle, as argued by Mercury. We disagree that the question is ambiguous, at least in the context of this case.
The issue is not whether there are two interpretations of "modified" that could render the question ambiguous in the abstract; rather, the issue is whether an objectively reasonable person in Roberts' situation (i.e., having installed larger, wider tires and a lift-kit on his truck) could truthfully answer the question in either the affirmative or the negative. See State Farm Fire & Cas. Ins. Co. v. Deni Assocs. of Fla., Inc., 678 So.2d 397 (Fla. 4th DCA 1996) (stating that insurance policy language generally is read as it would be understood by a reasonable person). Thus, the fact that, under the interpretation proffered by Mercury, "modified" might be ambiguous in the context of an applicant who had only added mud flaps, fuzzy dice, or window tinting to his vehicle is irrelevant to the issue of whether the term is ambiguous to an objectively reasonable person in Roberts' situation.
We conclude that there is no objectively reasonable interpretation of "modify" that would justify Roberts' negative answer to this question. Where, as here, neither the application form, nor the policy incorporated by reference therein, defines "modify," we interpret the word in accordance with its plain and ordinary meaning as reflected in the dictionary. See Garcia v. Federal Ins. Co., 969 So.2d 288, 291-92 (Fla.2007). The dictionary defines "modify" to mean "to make minor changes in" and "to make a basic or important change in; alter." See Webster's Seventh New Collegiate Dictionary, at 544 (1967). One only needs to look at the pictures of Roberts' truck to conclude that his negative answer to the question was inaccurate under either of these definitions. Moreover, although an objective standard applies, it is significant that Roberts acknowledged in his testimony that his truck had been "altered in many ways" (emphasis added), which in and of itself would have required an affirmative answer to the question. See id. at 24 (defining "alter" to mean "to make different without changing into something else"); cf. Carter v. United of Omaha Life Ins., 685 So.2d 2, 6 (Fla. 1st DCA 1996) (explaining that an applicant's belief of the truth of his answer must be accepted "only *734 so far as that belief is not clearly contradicted by the factual knowledge on which it is based") (quoting Skinner v. Aetna Life & Casualty, 804 F.2d 148, 151 (D.C.Cir.1986)), approved in pertinent part by, Green v. Life & Health of Am., 704 So.2d 1386 (Fla.1998).
The interpretation proffered by Appellee is not reasonable, even when "modify" is viewed in context of the other types of vehicles listed in the question and certain provisions in the policy. Vehicles that are "rebuilt" or "salvaged" are not, as the trial court found, non-street legal; they simply receive different titles and are subject to additional disclosure requirements upon transfer. See §§ 319.14, 319.30, Fla. Stat. Likewise, the other terms in the question"altered" and "specifically built/customized"do not refer to non-street legal vehicles or racing vehicles. Cf. § 320.0863, Fla. Stat. (2009) (providing special registration for "custom vehicles" that meet applicable safety requirements). Moreover, the fact that the policy covers certain "custom parts or equipment" and "special equipment or modifications" does not render "modified" ambiguous because the coverage provided in the policy for loss or damage to such parts is limited to $1,000 unless the equipment is disclosed in the application and an additional premium is paid, which did not occur in this case.
For these reasons, the trial court erred in granting partial summary judgment for Appellee. The final judgment is therefore reversed. As the record reveals disputed issues of fact as to whether or not the broker was an agent of Mercury, we remand for consideration of this issue. See Almerico v. RLI Ins. Co., 716 So.2d 774, 776-77 (Fla.1998); Amstar Ins. Co. v. Cadet, 862 So.2d 736, 739-42 (Fla. 5th DCA 2003); Gen. Ins. Co. v. Ramanovski, 443 So.2d 302, 304 (Fla. 3d DCA 1983); Gaskins, 397 So.2d at 731-32.
REVERSED and REMANDED for further proceedings.
THOMAS, J., concurs; PADOVANO, J., dissents with opinion.
PADOVANO, J., dissenting.
I respectfully dissent for three reasons: (1) the provision in the application that would allow the insurance company to deny coverage on the ground that the insured had failed to disclose a modification of the vehicle cannot be reconciled with other provisions in the policy expressly affording insurance coverage for undisclosed modifications; (2) the term "modify" in the application is ambiguous and could reasonably refer to something more than the addition of custom parts to the vehicle, as was the case here; and (3) assuming the judgment is to be reversed, and it should not be in my view, it should be reversed for a trial on all of the factual issues in the case and not merely for a resolution of the agency issue identified in the majority opinion.
The majority assumes that the term "modify" was used only in the application for insurance, but that term was also used in the text of the insurance policy itself. The significance of this error is that the meaning of the term "modify" as used in the policy forecloses the possibility that coverage could be denied solely for a failure to disclose any change in the vehicle, much less a change that merely consists of the installation of custom parts. By its terms, the policy covers all modifications of the vehicle, even those that are not disclosed.
The property damage section of the policy contains the following exclusion: "There is no coverage for . . . (8) special equipment or modifications in excess of $1,000.00 value in the aggregate unless such equipment or modification is specifically *735 listed on the declarations page." The phrase "special equipment or modification" is defined in the policy as "1. equipment not installed by the original manufacturer. . . [or] 2. any modification, customization, or enhancement." By the plain language of these provisions, coverage exists to some extent, even for special equipment that was not disclosed on the application. If the insured has modified the vehicle by installing aftermarket tires or an aftermarket suspension system and has not disclosed the modifications to the company, coverage still exists to the extent of $1,000.00.
In this case we are dealing with a dispute about liability coverage, but if we are to ascribe a fair meaning to the term "modify" as used in the application we must also consider the way in which the insurance company used that term in the text of the policy. As the supreme court explained in Excelsior Ins. Co. v. Pomona Park Bar & Package Store, 369 So.2d 938, 941 (Fla.1979), the courts should interpret the meaning of terms used in an insurance policy by considering the policy as a whole. See also Gen. Star Indem. Co. v. W. Fla. Village Inn, Inc., 874 So.2d 26 (Fla. 2d DCA 2004) (observing that the policy and application should be construed together). It would make little sense, in my view, to conclude that the insurance company meant to provide coverage for property damage, albeit to a limited extent, for a special part or modification not disclosed in the application, and at the same time deny liability coverage on the ground that the insured did not disclose the existence of the special part or modification.
To the contrary, I believe that the language of the clause limiting coverage for special equipment or modifications negates a claim that the insured misrepresented a material fact by failing to disclose the modification. Because the policy expressly provides coverage to some extent for special parts and modifications not previously disclosed or listed on the declarations page, it is reasonable to conclude that the failure to disclose the existence of special tires or a special suspension system was not the kind of misrepresentation that could invalidate the entire policy. The majority has arrived at a contrary conclusion by interpreting the terms of the application in isolation as if they were unrelated to the terms used in the policy itself.
Even if it were not for this inconsistency between the application and the property damage provisions of the policy, I believe that the term "modified" as used in the application, is ambiguous. I agree with the trial judge that when the term "modified" is read in the context of the entire question, "Is the vehicle rebuilt, salvaged, modified, altered or specifically built/customized?" it could refer to a change that is much more fundamental than the addition of larger tires and a heavy-duty suspension system. The terms "built," "rebuilt," and "salvaged," all suggest that the term "modified" refers to a much more significant transformation of the vehicle.
This conclusion is supported by the fact that the insurance policy expressly provides coverage for "custom parts or equipment." In this regard, the policy states "If you pay a premium for Comprehensive Coverage or Collision Coverage we will pay for the theft of, or damage to, custom parts or equipment resulting from any loss for which Comprehensive Coverage or Collision Coverage is provided under the terms of this policy." The fact that the policy affords coverage for damage to custom parts and equipment can only mean that it is permissible for an insured to install custom parts and equipment. That this coverage is afforded under the policy also suggests that the need to disclose a modification to the vehicle means something *736 much more than adding a custom part.
The majority dismisses the fact that the policy affords coverage for custom parts and equipment by noting that coverage for those parts would be limited if they are not disclosed. In my view, that is beside the point. The fact that the policy provides any coverage at all for damage to custom parts and equipment, the existence of which was not disclosed, suggests that some kinds of undisclosed modifications to the vehicle will not invalidate the coverage.
The main point of the majority opinion is that a reasonable person in the insured's position would understand that the installation of oversized tires and a special suspension system qualifies as a modification. I think that this conclusion is undercut, at least to some extent, by the very debate we have had in this case. At this point in the progress of the case, four judges have carefully examined the application and insurance policy in an effort to determine the meaning of the term "modify" as used in the application. Two of them believe the term is ambiguous but the other two believe that it is not. It is difficult for me to understand how we can expect a layperson focused on the task of purchasing insurance to have a better or clearer understanding of the policy.
The majority concedes that the term "modified" might be ambiguous if the insured had merely added "mud flaps, fuzzy dice, or window tinting" to his vehicle. But it seems to me that this kind of reasoning puts the court in the position of making ad hoc decisions about the situations in which the term "modify" is ambiguous.
It is fair to assume, as the majority evidently has in this case, that the insurance company might be less concerned about changes in appearance than it would be about changes that affect safety or performance. However, we must decide the issue based on the language of the policy, not on the basis of our own assumptions. According to the policy, the phrase "custom parts or equipment" means "equipment, devi[c]es, accessories, enhancements and changes, other than those which are originally manufacturer installed which: a. are permanently installed or attached; and b. alter the appearance or performance of the car." This definition plainly includes the tires and suspension system added to the truck in this case. Consequently, the truck is covered.
It does not matter that these custom parts altered the appearance of the truck, a fact that is plain for anyone to see. Nor does it matter that the installation of these parts will alter the performance of the truck, a fact that could be inferred by anyone with a rudimentary knowledge of physics. We must go by the policy, and the policy provides coverage not only for custom parts that alter the appearance of the vehicle, as in the examples given by the majority, but also for custom parts that alter the performance of the vehicle.
Because I believe that the meaning of the term "modified" is ambiguous for the reasons given here, I would affirm the summary judgment for the insured. If the judgment is to be reversed, however, the reversal should not be limited to an adjudication of the agency issue. A resolution of that issue will not settle the controversy in this case as it is merely one part of a larger issue regarding the materiality of the alleged misrepresentation.
The narrow scope of the remand effectively adjudicates other factual issues in the insurance company's favor. I believe this was a mistake. The reversal of a summary judgment for one party does not adjudicate an issue on the merits of the case in favor of the other, it merely opens *737 the case for trial. This rule applies even if both parties moved for summary judgment in the trial court and even if they each contended that there were no disputed issues of material fact. See Shaffran v. Holness, 93 So.2d 94 (Fla.1957). A party who sought a summary judgment in the trial court will be estopped only from taking a position on appeal that is contrary to that particular issue, and is not estopped from claiming that the facts were in dispute in other material issues in the case. Spencer v. Halifax Hosp. Dist., 242 So.2d 143 (Fla. 1st DCA 1970); Harper ex rel. Daley v. Toler, 884 So.2d 1124 (Fla. 2d DCA 2004).
The effect of the decision by the majority is merely to determine that the policy is not ambiguous; yet the majority appears to skip forward to conclude as a matter of law that the insured did, in fact, make a material misrepresentation. That is the very point the insurance company must now prove in order to justify its denial of coverage. The insurance company has not yet won the case as one might think from reading the majority opinion; it has merely won the right to a trial.
An insured's misrepresentation in an application need not be intentional but it must be material to the insurer's acceptance of the risk. Life Ins. Co. of Va. v. Shifflet, 201 So.2d 715 (Fla.1967); Kieser v. Old Line Life Ins. Co. of Am., 712 So.2d 1261 (Fla. 1st DCA 1998). The insurer must prove "the misrepresentation, its materiality, and the insurer's detrimental reliance." Griffin v. Am. Gen. Life & Acc. Ins. Co., 752 So.2d 621, 623 (Fla. 2d DCA 1999). These are factual questions for the jury. Celtic Life Ins. Co. v. Fox, 544 So.2d 245 (Fla. 2d DCA 1989); Blue Cross/Blue Shield of Fla., Inc. v. Mignolet, 475 So.2d 965 (Fla. 3d DCA 1985); Cabella v. Travelers Indem. Co., 248 So.2d 539 (Fla. 3d DCA 1971).
Whether the incorrect statement on the application form was material is an issue that might not stand or fall entirely on the agency issue that is the subject of the remand to the trial court. We do not even know whether there is a dispute of material fact on that issue. The trial judge did not reach the question, having ruled for the insured on a more fundamental point.
The insurance company's argument on the agency issue is that the broker had no apparent authority to act on the company's behalf because the application shows that she had only a limited authority to bind coverage. I do not read the application to convey this point at all. It seems to me that the application did give the broker authority to bind coverage if she believed that the correct answer to the question regarding modifications was "no."
In any event, the question of agency is one that is yet to be determined. The rule in Florida is that a broker may be found to be a statutory agent of a particular insurance company if the company provides sufficient indicia of agency, such as "blank forms, applications, stationery, or other supplies used in soliciting or negotiating insurance contracts." § 626.342(1), Fla. Stat.; Almerico v. RLI Ins. Co., 716 So.2d 774 (Fla.1998); Amstar Ins. Co. v. Cadet, 862 So.2d 736 (Fla. 5th DCA 2003); Straw v. Assoc. Doctors Health & Life, 728 So.2d 354 (Fla. 5th DCA 1999). In such case, the knowledge of the broker would be imputed to the insurance company. Guarente-Desantolo v. John Alden Life Ins. Co., 744 So.2d 1123 (Fla. 4th DCA 1999). In the present case, the broker was asking the insured questions from the company's application form. If the broker knew the condition of the truck, as the insured says she did, her knowledge would be imputed to the insurance company thus defeating its claim that it would not have accepted the risk had it known.
*738 The point evidently overlooked by the majority is that the insured's incorrect answer might be immaterial for other reasons. For example, the evidence might show that the insurance company routinely insured trucks like this and is complaining in this case only to avoid the payment of a rather large claim. Even if that is not the case, the jury might simply reject the claim by the company's underwriters that it would not have insured a truck with oversized tires and a lift kit. We simply do not know the answers to these questions.
For these reasons, I believe that the trial judge was correct in granting summary judgment for the insured and that the judgment should be affirmed. If the majority believes that the trial court's decision must be reversed, it should be reversed for a trial in which the insurance company would have to prove that the insured made a material misrepresentation.
NOTES
[*] Mercury sought appellate review of the trial court's order granting partial summary judgment, but we dismissed the appeal for lack of jurisdiction. Mercury Ins. Co. of Fla. v. Markham, 938 So.2d 607 (Fla. 1st DCA 2006).